COMMERCIAL UNION INSURANCE COMPANY v LIBERTY
MUTUAL INSURANCE COMPANY

Docket Nos. 75089, 75090. Argued January 15, 1986 (Calendar No. 15). Decided September 17, 1986.

Commercial Union Insurance Company, an excess insurance carrier, brought an equitable subrogation action in the Oakland Circuit Court against Liberty Mutual Insurance Company, a primary insurance liability carrier, alleging that Liberty's failure to settle a case against a mutual insured for an amount much less than Commercial was eventually required to pay constituted bad faith and caused Commercial to be exposed to risk. The court, Robert L. Templin, J., entered judgment on a jury verdict for the defendant and denied the plaintiff's motion for judgment notwithstanding the verdict or for a new trial. The Court of Appeals, M. J. KELLY, P.J., and HOOD and SHEPHERD, JJ., reversed and remanded for a new trial, holding that the trial court's instructions on bad faith were, in part, prejudicial and erroneous (Docket Nos. 67250, 68242). The defendant appeals and the plaintiff cross-appeals.

In an opinion by Justice ARCHER, joined by Chief Justice WILLIAMS and Justices BRICKLEY, CAVANAGH, BOYLE, and RILEY, the Supreme Court held:

A trial court, in an action by an insured alleging bad faith by an insurer, should instruct the jury that bad faith is the arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty.

1. Good-faith denials, offers of compromise, or other honest

REFERENCES

Am Jur 2d, Insurance §§ 1399, 1400, 1403, 1674 et seq., 2028 et seq.

What constitutes bad faith on part of insurer rendering it liable for statutory penalty imposed for bad faith in failure to pay, or delay in paying, insured's claim. 33 ALR4th 579.

Reliance on, or rejection of, advice of counsel as factor affecting liability in action against liability insurer for wrongful refusal to settle claim. 63 ALR3d 725.

Liability insurer's negligence or bad faith in conducting defense as ground of liability to insured. 34 ALR3d 533.

See also the annotations in the ALR3d/4th Quick Index under Insurance.

errors of judgment are not sufficient to establish bad faith. Nor can claims of bad faith be based upon negligence or bad judgment, so long as the actions were made honestly and without concealment. However, bad faith can exist without actual dishonesty or fraud.

2. Supplemental factors which may be considered in determining whether liability for bad faith exists are as follows. Because the facts in each case will vary, the trial court has the option of determining which factors, if any, are to be included in jury instructions. The factors are not exclusive, and no single factor is decisive.

— Failure to keep the insured fully informed of all developments in a claim or suit that could reasonably affect the interests of the excess insurer.

— Failure to inform the insured of all settlement offers that do not fall within policy limits.

— Failure to solicit a settlement offer or initiate settlement negotiations when warranted by the circumstances.

— Failure to accept a reasonable compromise offer of settlement when the facts of the case or claim indicate obvious liability and serious injury.

— Rejection of a reasonable offer of settlement within policy limits.

— Undue delay in accepting a reasonable offer to settle a potentially dangerous case within policy limits where the verdict potential is high.

— An attempt by the insurer to coerce or obtain an involuntary contribution from the insured in order to settle within policy limits.

— Failure to make a proper investigation of the claim prior to refusing an offer of settlement within policy limits.

— Disregarding advice or recommendations of an adjuster or attorney.

— Serious and recurrent negligence by the insurer.

— Refusal to settle a case within policy limits following an excessive verdict when the chances of reversal on appeal are slight or doubtful.

— Failure to take an appeal following a verdict in excess of policy limits where there are reasonable grounds for such an appeal, especially where recommended by trial counsel.

In applying the factors, the conduct under scrutiny must be considered in light of the circumstances existing at the time of the conduct. Bad faith arises upon the occurrence of certain

acts, not at a later date as a result of an unsuccessful day in court.

3. In this case, the trial court's instruction that bad faith is to be equated with duplicity or deceitful conduct or concealment was error which increased the plaintiff's burden of proof, requiring reversal and a new trial.

Justice LEVIN, concurring, stated that the terms arbitrary, reckless, and indifferent have varying meanings depending on context. To instruct a jury in the abstract that arbitrary or indifferent conduct would tend to show bad faith, without reference or regard to particular circumstances, could readily cause jury misunderstanding and lead to erroneous results. Intentional disregard of the interests of a person owed a duty does not always equate with bad faith. An insurer may properly put its interests ahead of the interests of the insured, and thus intentionally disregard the interests of the insured, so long as it does not act in bad faith.

A list of supplemental factors to be considered in determining whether there is liability for bad faith, which were developed in cases in which the Supreme Court has not examined or ruled upon the record and for which there has not been adversary briefing should not be offered for inclusion in jury instructions. If the jury is to be instructed upon specific factors, the trial court should add that merely because there is evidence tending to show the presence of a factor does not necessarily mean that there was bad faith. Further, if a jury is instructed on factors that tend to show bad faith, it should also be instructed on factors that tend to countervail such a finding, and the trial court should be required to incorporate into the instruction the concept expressed in the opinion of the Court that it is inappropriate in reviewing the conduct of the insurer to utilize twenty-twenty hindsight, that the conduct under scrutiny must be considered in light of the circumstances existing at the time, that if bad faith exists in a given situation it arose upon the occurrence of the acts in question, and that bad faith may not arise at some later date as a result of an unsuccessful day in court.

Affirmed.

137 Mich App 381; 357 NW2d 861 (1984) affirmed.

### OPINION OF THE COURT

1. INSURANCE — JURY INSTRUCTIONS — BAD FAITH.

A trial court, in an action by an insured alleging bad faith by an insurer, should instruct the jury that bad faith is the arbitrary,

reckless, indifferent, or intentional disregard of the interests of the person owed a duty.

2. INSURANCE — SETTLEMENT OF CLAIMS — BAD FAITH — FRAUD.

Good-faith denials, offers of compromise, or other honest errors of judgment by an insurer made in attempts to settle a claim are not sufficient to establish bad faith with respect to an insured; nor can claims of bad faith by the insurer be based upon negligence or bad judgment, so long as the actions were made honestly and without concealment; however, bad faith can exist without actual dishonesty or fraud.

3. INSURANCE — SETTLEMENT OF CLAIMS — BAD FAITH.

In determining whether liability exists for bad faith in an attempt by an insurer to settle a claim, a trial court may supplementally instruct the jury, where applicable in a given case, to consider whether the insurer failed to keep the insured fully informed of all developments in the claim or suit that could reasonably have affected the interests of the insured, failed to inform the insured of all settlement offers that did not fall within policy limits, failed to solicit a settlement offer or initiate settlement negotiations when warranted by the circumstances, failed to accept a reasonable compromise offer of settlement where the facts of the case or claim indicated obvious liability and serious injury, rejected a reasonable offer of settlement within policy limits, unduly delayed in accepting a reasonable offer to settle a potentially dangerous case within policy limits where the verdict potential was high, attempted to coerce or obtain an involuntary contribution from the insured in order to settle within the policy limits, failed to make a proper investigation of the claim prior to refusing an offer of settlement within policy limits, disregarded advice or recommendations of an adjuster or attorney, was seriously and recurrently negligent, refused to settle a case within policy limits following an excessive verdict when the chances of reversal on appeal were slight or doubtful, and failed to take an appeal following a verdict in excess of the policy limits where there were reasonable grounds for such an appeal, especially where recommended by trial counsel.

*Law Offices of Franklin, Petrulis, Bigler, Berry & Johnston, P.C.* (by *Bruce W. Franklin, J. Steven Johnston,* and *Richard R. Danforth*), for the plaintiff.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton*

(by *Konrad D. Kohl* and *Michael L. Updike*) for the defendant.

ARCHER, J. Plaintiff, an excess insurance carrier, filed an equitable subrogation action in the Oakland Circuit Court against defendant, a primary insurance carrier. Plaintiff alleged that defendant's failure to negotiate a settlement in a case against their mutual insured constituted bad faith pursuant to *City of Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW2d 643 (1929), thereby causing plaintiff to be exposed to risk. A jury found no cause of action against Liberty Mutual. The circuit court denied plaintiff's motion for judgment notwithstanding the verdict or for a new trial. The Court of Appeals reversed, ordering a new trial, and finding that the trial court's "bad faith" instructions were, in part, prejudicial and erroneous. *Commercial Union Ins Co v Liberty Mutual Ins Co,* 137 Mich App 381; 357 NW2d 861 (1984).

We affirm the decision of the Court of Appeals.

I

Liberty Mutual, a primary insurance carrier, provided primary liability insurance coverage for WXYZ with a single injury coverage limit of $100,000. Edith Webster suffered a slip and fall while working at WXYZ-TV. Ms. Webster and her husband, Forrest, brought suit for damages, and Liberty Mutual assumed the defense on behalf of WXYZ. Following trial, the Websters were awarded $100,000. Liberty Mutual appealed. The Court of Appeals reversed and remanded the case for a new trial. *Webster v WXYZ,* 59 Mich App 375; 229 NW2d 460 (1975), lv den 395 Mich 751 (1975). Settlement negotiations continued, yet the parties

were unable to come to an agreement. The case went to trial a second time, where the jury returned a verdict of $700,000 in favor of the Websters. Liberty Mutual tendered its $100,000 policy limits, and Commercial Union took over the defense of the case. Its appeal efforts were unsuccessful. Commercial Union was eventually required to pay $854,131.61 to the Websters.

Commercial Union subsequently sued Liberty Mutual for failure to settle the Webster action for an amount much less than Commercial Union has since been required to pay. Commercial Union's rights in this suit are premised upon its status as an equitable subrogee of wxyz. In alleging that Liberty Mutual acted in "bad faith," Commercial Union complained that Liberty Mutual (1) failed to make settlement offers and ignored numerous settlement demands between May, 1971, and the commencement of the first Webster trial in October, 1973, (2) failed to communicate each and every settlement demand made throughout the pendency of the Websters' claim, (3) failed to respond properly to settlement offers at figures below the first jury award while the first Webster case was pending on appeal, (4) chose to ignore the advice of its attorney to make efforts to settle the case following the Court of Appeals reversal of the first Webster case, but before the second trial, and (5) failed to communicate all material developments as they occurred throughout the pendency of the Websters' claim.

Liberty Mutual responded to Commercial Union's allegations by contending that Commercial Union (1) never suggested Liberty Mutual pay its policy limits to settle the Websters' claim, (2) never retained its own counsel, (3) never participated in settlement negotiations, (4) never independently evaluated the value of the Websters'

claim, and (5) never objected to Liberty Mutual's proceeding with a second trial of the case.

After evidence was presented at the Commercial Union/Liberty Mutual trial, the trial court gave the following "bad faith" instruction, which reads in pertinent part:

The term bad faith as used in these instructions may be defined as involving insincerity, *dishonesty,* disloyalty, *duplicity, or deceitful conduct; it implies dishonesty or concealment.* An honest mistake of judgment is not in and of itself bad faith and no single fact is necessarily decisive of the issue. [Emphasis supplied.][1]

---

[1] Provided in its entirety, the "bad faith" instruction reads:

Now, as to bad faith, a lot has been said about bad faith, and of course, that is the claim here of the Plaintiff, that the Defendant acted in bad faith.

Now, good or bad faith is a state of mind.

The term bad faith as used in these instructions may be defined as involving insincerity, dishonesty, disloyalty, duplicity, or deceitful conduct; it implies dishonesty or concealment. An honest mistake of judgment is not in and of itself bad faith and no single fact is necessarily decisive of the issue.

Now, the insurer does not act in bad faith if it refuses settlement in the honest belief that it has a fair chance of victory, or of keeping the verdict within the policy limit or, upon reasonable grounds that the compromise amount is excessive.

Now, indicators of bad faith include but are not limited to the following:

First, that the primary insurer treated the case as if it were not responsible for the entire amount.

Also an indicator is failure to inform the insured or the excess carrier of all offers and demands and their legal significance.

Also another indicator is failure to adequately notify the assured [sic] or the excess carrier of the claim and its nature.

The arbitrary refusal to settle for a reasonable amount, where it is apparent that the suit would result in a judgment in excess of the policy limit, or indifference to the effect of the refusal on the excess carrier, or failure to fairly consider a compromise and facts presented and pass honest judgment thereon, or refusal to settle upon grounds which depart from the contract and the purpose of the grant of power, would tend to show bad faith.

In finding this part of the instruction to be erroneous, the Court of Appeals relied on *City of Wakefield v Globe Indemnity Co,*[2] *supra.* In *Wakefield,* the insured, the City of Wakefield, operated an automobile bus line. Frank Borski was injured by one of the city vehicles and sued for damages. Globe Indemnity Co., which provided the city with a $10,000 policy of liability insurance, assumed the defense of the case along with the city attorney, who was attorney of record. Near the end of trial, the carrier's attorney, having heard the testimony of medical witnesses and having talked with witnesses for the defense, concluded that the case was hopeless and recommended settlement. Mr. Campbell, a representative of the insurance carrier, refused settlement and, although given full opportunity at trial to disclose his reasons for refusal, failed to do so. The jury returned a verdict against Globe Indemnity for over $15,000, in excess of the amount of the policy limit. The insured was required to pay the excess amount of the judgment. The insured sued its liability insurance carriers on the theory that the carriers were guilty of negligence and bad faith in refusing to accept a compromise offer of settlement for less than their liability as recommended by the carriers' attorney. The *Wakefield* Court held that the insurers were

---

Now, the primary carrier owes the same duty to the excess carrier as the primary carrier would owe to its insured.

[2] In *Wakefield,* the lead opinion did not acquire the majority signatures. The concurring opinion written by Justice SHARP acquired five signatures. The majority quoted with approval the minority's statement that "[i]t is not bad faith if counsel for the insurer refuse settlement under the *bona fide* belief that they might defeat the action, or, in any event, can probably keep the verdict within the policy limit." The majority similarly approved a minority statement that "[a] mistake of judgment is not bad faith." *Wakefield* at 656. The majority did not indicate whether it approved of some additional language in *Wakefield* at 652-653, which was used in the trial court instruction quoted in footnote 1.

not liable to the insured for refusal to compromise his claim unless the refusal was in bad faith, stating that

> the insurer does not act in bad faith if it refuses settlement in the honest belief that it has a fair chance of victory, or of keeping the verdict within the policy limit, or . . . that the compromise amount is excessive, or if it has legal defenses . . . . On the other hand, arbitrary refusal to settle for a reasonable amount, where it is apparent that suit would result in a judgment in excess of the policy limit, indifference to the effect of refusal on the insured, failure to fairly consider a compromise and facts presented and pass honest judgment thereon, or refusal upon grounds which depart from the contract and the purpose of the grant of power, would tend to show bad faith. [246 Mich 652-653.]

In relying on *Wakefield,* the Court of Appeals in the instant case held that

> "[b]ad faith" by an insurance company for a breach of a duty to settle is something more than negligence. *Wakefield, supra; Commercial Union v Medical Protective Co,* [136 Mich App 412; 356 NW2d 648 (1984), lv gtd 422 Mich 939 (1985)]. However, unlike the implication of the *Medley* [*v Canady,* 126 Mich App 739; 337 NW2d 909 (1983)] definition, "bad faith" pursuant to *Wakefield* is something less than fraud . . . .
>
> By instructing the jury that bad faith may be defined as or equated with "duplicity or deceitful conduct," or "concealment," the trial court erroneously increased Commercial Union's burden of proof. The language defining "bad faith" in *Wakefield* is sufficient. We find the errors in the substantive instructions to the jury prejudicial and reversible. [137 Mich App 391-392.]

We agree with the Court of Appeals. By instruct-

ing the jury that bad faith is equated with "duplicity or deceitful conduct," or "concealment," the trial court erroneously increased plaintiff's burden of proof. However, unlike the Court of Appeals, we find the language defining "bad faith" in *Wakefield* lacking because it defines "bad faith" by limited example only.

Contrary to holdings in some other jurisdictions, bad faith should not be used interchangeably with either "negligence" or "fraud."[3] Michigan has reached this conclusion in the past.[4] Accordingly, we define "bad faith" for instructional use in trial courts as arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty.[5]

Good-faith denials, offers of compromise, or

[3] Jurisdictions which favor simple negligence and standards just short of fraud are collected at 40 ALR2d 168 and 34 ALR3d 533.

[4] See *City of Wakefield, supra, Bentley v Farmers' Ins Exchange,* 289 F2d 59 (CA 6, 1961), *Rutter v King,* 57 Mich App 152; 226 NW2d 79 (1974), *Commercial Union v Medical Protective Co, supra, Jones v Nat'l Emblem Ins Co,* 436 F Supp 1119 (ED Mich, 1977), *McCoy v Zurich Ins Co,* 509 F Supp 1106, 1108 (ED Mich, 1981), aff'd 703 F2d 564 (CA 6, 1982), and *Jackson v St Paul-Mercury Indemnity Co,* 339 F2d 40 (CA 6, 1964).

[5] Although the right to recover on a bad-faith claim is generally conditioned upon proving "bad faith" as it is defined in this opinion, we agree with the Court of Appeals that the "bad faith" definition, "conscious doing of a wrong because of dishonest purpose or moral obliquity," as used in *Medley v Canady,* 126 Mich App 739, 748; 337 NW2d 909 (1983), is correct when limited to bad-faith cases involving § 6 of the Uniform Trade Practices Act, MCL 500.2006(4); MSA 24.12006(4). The differentiation in definitions arises because § 6 of the Uniform Trade Practices Act is a statutory penalty, intended to penalize recalcitrant insurers who, in bad faith, are dilatory in paying claims. *Fletcher v Aetna Casualty & Surety Co,* 80 Mich App 439, 445; 264 NW2d 19 (1978), aff'd 409 Mich 1 (1980); *Sharpe v DAIIE,* 126 Mich App 144, 150; 337 NW2d 12 (1983); *Sederholm v Michigan Mutual Ins Co,* 142 Mich App 372, 394; 370 NW2d 357 (1985). Since § 6 is a statutory provision having a punitive purpose, a higher standard of liability is warranted. Virtually all authority sanctioning penalties and other punitive-type damages require the higher standard of malice or fraud. See *Hoskins v Aetna Life Ins Co,* 6 Ohio St 3d 272; 452 NE2d 1315 (1983); *Kirk v Safeco Ins Co,* 28 Ohio Misc 44, 46; 273 NE2d 919 (1970).

other honest errors of judgment are not sufficient to establish bad faith. Further, claims of bad faith cannot be based upon negligence or bad judgment, so long as the actions were made honestly and without concealment. However, because bad faith is a state of mind,[6] there can be bad faith without actual dishonesty or fraud. If the insurer is motivated by selfish purpose or by a desire to protect its own interests at the expense of its insured's interest, bad faith exists, even though the insurer's actions were not actually dishonest or fraudulent.[7]

Although the Court has articulated here a precise definition of "bad faith" for instructional purposes, there are supplemental factors which may be considered in determining whether liability exists for bad faith. These factors clarify the "indicators" pronounced in the trial court's bad-faith instruction in the instant case.[8] They also embrace the *Wakefield* language.[9] Because the facts of each individual case will vary in any given situation, the trial court, in its discretion, will have the option of determining which factors, if any, are to be included in instructions to the jury. The recommended factors are not exclusive. No single factor shall be decisive. Among the factors which the factfinder may take into account, together with all other evidence in deciding whether or not the defendant acted in bad faith are:[10]

[6] As stated in *Wakefield:* "Good or bad faith is a state of mind." 246 Mich 653.

[7] See *Valentine v Liberty Mutual Ins Co,* 620 F2d 583 (CA 6, 1980); *Shearer v Reed,* 286 Pa Super 188; 428 A2d 635 (1981).

[8] See n 1.

[9] See n 2.

[10] These twelve recommended factors represent a composite of the dispositive issues discussed in numerous "bad faith" cases in other jurisdictions. The authorities are collected in 40 ALR2d 168, 10 ALR4th 879, 63 ALR3d 725, 85 ALR3d 1211, and Sutterfield, *Relationships between excess and primary insurors: The excess judgment problem,* 52 Ins Counsel J 638, 640-641 (1985).

1) failure to keep the insured fully informed of all developments in the claim or suit that could reasonably affect the interests of the insured,[11]

2) failure to inform the insured of all settlement offers that do not fall within the policy limits,[12]

3) failure to solicit a settlement offer or initiate settlement negotiations when warranted under the circumstances,[13]

4) failure to accept a reasonable compromise offer of settlement when the facts of the case or claim indicate obvious liability and serious injury,[14]

5) rejection of a reasonable offer of settlement within the policy limits,[15]

6) undue delay in accepting a' reasonable offer to settle a potentially dangerous case within the policy limits where the verdict potential is high,[16]

7) an attempt by the insurer to coerce or obtain an involuntary contribution from the insured in order to settle within the policy limits,[17]

8) failure to make a proper investigation of the claim prior to refusing an offer of settlement within the policy limits,[18]

---

[11] See *Ranger Ins Co v Travelers Indemnity Co,* 389 So 2d 272 (Fla App, 1980); *Springer v Citizens Casualty Co,* 246 F2d 123 (CA 5, 1957); *Jones v Nat'l Emblem Ins Co,* n 4 *supra; Meirthew v Last,* 376 Mich 33; 135 NW2d 353 (1965).

[12] See *Short v Dairyland Ins Co,* 334 NW2d 384 (Minn, 1983).

[13] See *Rutter v King,* n 4 *supra; Glendale v Farmers Ins Exchange,* 126 Ariz 118; 613 P2d 278 (1980); *Ranger Ins Co v Travelers Indemnity Co,* n 11 *supra; Shearer v Reed,* n 7 *supra; Rova Farms Resort, Inc v Investors Ins Co,* 65 NJ 474; 323 A2d 495 (1974).

[14] See *Jackson v St Paul-Mercury Indemnity Co,* n 4 *supra; Short v Dairyland,* n 12 *supra.*

[15] See *Samson v Transamerica Ins Co,* 30 Cal 3d 220; 178 Cal Rptr 343; 636 P2d 32 (1981); *Rova Farms Resort, Inc v Investors Ins Co,* n 13 *supra; Peter v Travelers Ins Co,* 375 F Supp 1347 (CD Cal, 1974).

[16] See *Phelan v State Farm Mutual Automobile Ins Co,* 114 Ill App 3d 96; 69 Ill Dec 861; 448 NE2d 579 (1983); *Hayes Bros, Inc v Economy Fire & Casualty Co,* 634 F2d 1119 (CA 8, 1980); *Maine Bonding & Casualty Co v Centennial Ins Co,* 64 Or App 97; 667 P2d 548 (1983), aff'd en banc 298 Or 514; 693 P2d 1296 (1985); *Rova Farms Resort, Inc v Investors Ins Co,* n 13 *supra.*

[17] See *Rova Farms Resort, Inc v Investors Ins Co,* n 13 *supra.*

[18] See *Fertitta v Allstate Ins Co,* 439 So 2d 531 (La App, 1983), clarified, motion den 441 So 2d 1250 (La App, 1983), aff'd 462 So 2d

9) disregarding the advice or recommendations of an adjuster or attorney,[19]

10) serious and recurrent negligence by the insurer,

11) refusal to settle a case within the policy limits following an excessive verdict when the chances of reversal on appeal are slight or doubtful,[20] and

12) failure to take an appeal following a verdict in excess of the policy limits where there are reasonable grounds for such an appeal, especially where trial counsel so recommended.[21]

In applying any factors, it is inappropriate in reviewing the conduct of the insurer to utilize "20-20 hindsight vision." The conduct under scrutiny must be considered in light of the circumstances existing at the time. A microscopic examination, years after the fact, made with the luxury of actually knowing the outcome of the original proceeding is not appropriate. It must be remembered that if bad faith exists in a given situation, it arose upon the occurrence of the acts in question; bad faith does not arise at some later date as a result of an unsuccessful day in court.

II

The holding in this case makes it unnecessary for us to address the remaining issue raised on cross-appeal because our affirmance of the decision of the Court of Appeals renders the issue moot.

159 (La, 1985); *Van Dyke v St Paul Fire & Marine Ins Co,* 388 Mass 671; 448 NE2d 357 (1983).

[19] See *Allen v Allstate Ins Co,* 656 F2d 478 (CA 9, 1981); *Rova Farms Resort, Inc v Investors Ins Co,* n 13 *supra; Ranger Ins Co v Travelers Indemnity Co,* n 11 *supra; Ferris v Employers Mutual Casualty Co,* 255 Iowa 511; 122 NW2d 263 (1963).

[20] See *Samson v Transamerica Ins Co,* n 15 *supra; Phelan v State Farm Mutual Automobile Ins Co,* n 16 *supra.*

[21] See *Reichart v Continental Ins Co,* 290 So 2d 730 (La App, 1974), cert den 294 So 2d 545 (La, 1974).

We therefore affirm the decision of the Court of Appeals.

Williams, C.J., and Brickley, Cavanagh, Boyle, and Riley, JJ., concurred with Archer, J.

Levin, J. (*concurring*). I agree with the majority that the trial court erred in instructing the jury over objection "that bad faith is equated with 'duplicity or deceitful conduct,' or 'concealment . . . .' "[1]

I write separately because I am unable to agree with the definition of bad faith set forth in the opinion of the Court and other observations in the opinion.

The opinion states: "we define 'bad faith' for instructional use in trial court as arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty."[2]

The terms "arbitrary, reckless, indifferent" have varying meanings depending on the context.

It has been said that some authorities hold that the term "reckless" means "no more than 'negligent,' while others hold that [the term means] 'wantonness or bordering on willful,' and there is also a meaning between these two extremes." 76 CJS, p 63. The same encyclopedia states that the term has been held in particular cases to "imply mere inattention to duty; thoughtlessness; indifference; heedlessness; carelessness; and nothing more than mere negligence." *Id.*

In *City of Wakefield v Globe Indemnity Co,* 246 Mich 645, 653; 225 NW 643 (1929), this Court said that an "*arbitrary* refusal to settle for a reasonable amount, where it is apparent that suit would result in a judgment in excess of the policy limit,

[1] *Ante,* pp 135-136.
[2] *Id.,* p 136.

*indifference* to the effect of refusal on the insured . . . would tend to show bad faith." (Emphasis supplied.) The Court thereby indicated what kind of "arbitrary" or "indifferent" conduct would tend to show bad faith. To instruct a jury in the abstract that arbitrary or indifferent conduct would tend to show bad faith, without reference or regard to particular circumstances, could readily cause jury misunderstanding and lead to erroneous results.

Nor can I agree that "intentional disregard of the interests of the person owed a duty" may always be equated with bad faith. An insurer may properly put its interests ahead of the interests of the insured, and thus intentionally disregard the interests of the insured; it may act out of a "selfish purpose or by a desire to protect its own interests at the expense of its insured's interest,"[3] as long as it does not act in bad faith. If an insurer could not in any circumstance place its interests ahead of those of its insured, if it is obliged in all circumstances to subordinate its interests to the interests of its insured, then an insurer would be obliged in all cases to pay policy limits lest it expose the insured to any risk whatsoever of a judgment in excess of policy limits.

I also question cataloging a list of factors developed in cases the record in which this Court has not examined or ruled upon; the factors are necessarily taken out of context and may not adequately explain limitations implicit in the particular circumstances in which the factor was held to be relevant. Also, there has not been adversary briefing in this Court on the question whether all the factors enumerated in the opinion of the Court evidence bad faith.

[3] *Id.,* p 137.

If the Court is of the opinion that it is appropriate to instruct a jury concerning specific factors, it should, I believe, require the judge to add that merely because there is evidence tending to show the presence of a factor does not necessarily mean that there was bad faith. Further, if the jury is instructed on factors that tend to show bad faith it should also be instructed on factors that tend to countervail such a finding—the specific factors that tend to show an absence of bad faith.

Finally, if the jury is instructed on factors, the judge should be required or encouraged to incorporate into the instruction the gist of the last paragraph of part I of the opinion of the Court, viz.:

> In applying any factors, it is inappropriate in reviewing the conduct of the insurer to utilize "20-20 hindsight vision." The conduct under scrutiny must be considered in light of the circumstances existing at the time. A microscopic examination, years after the fact, made with the luxury of actually knowing the outcome of the original proceeding is not appropriate. It must be remembered that if bad faith exists in a given situation, it arose upon the occurrence of the acts in question; bad faith does not arise at some later date as a result of an unsuccessful day in court.

Absent a statement in the opinion of the Court requiring or encouraging the judge to so balance the instruction to the jury, the judge may not understand that he should incorporate in the instruction the gist of the foregoing language quoted from the opinion of the Court.