Jack E. BENKERT, M.D.; Allen B. Couch; and Hartford Accident & Indemnity Company, a foreign corporation, Plaintiffs-Appellants,

v.

MEDICAL PROTECTIVE COMPANY, Defendant-Appellee.

Nos. 86–1177, 86–1587.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 15, 1987.

Decided March 16, 1988.

Dennis J. Mendis, Feikens, Foster, Vandermale and DeNardis, P.C., Detroit, Mich., Lee A. Stevens, argued, for plaintiffs-appellants.

Richard A. Patterson, argued, Bloomfield Hills, Mich., for defendant-appellee.

Before ENGEL and RYAN, Circuit Judges, and PECK, Senior Circuit Judge.

RYAN, Circuit Judge.

Plaintiffs-appellants in this diversity action raise two issues in their appeal from the district court's order dismissing their state law claims against the defendant-appellee Medical Protective Company:

—Whether an insured may recover exemplary damages and damages for mental distress in an action against his insurer based on the insurer's alleged bad faith failure to settle a medical malpractice claim against the insured, and

—Whether an insured may assign to the "excess" coverage carrier and the malpractice claimant a cause of action against his primary insurance carrier for bad faith failure to settle.

We answer those questions no and yes, respectively, and hold:

—An insured may not recover exemplary damages or damages for mental distress where his insurer has acted in bad faith by failing to settle a malpractice action against the insured, and

—An insured's claim against his insurer for bad faith failure to settle is assignable.

## I.

In 1972, Allen Couch brought a medical malpractice action against Dr. Jack Benkert. Benkert had two malpractice insurance policies. His primary insurer, Medical Protective Company (MPC), issued a policy providing $100,000 coverage, and his excess coverage insurer, appellant Hartford Accident & Indemnity Company (Hartford), issued a policy providing $1,000,000 in coverage. MPC maintained exclusive control over Benkert's defense in Couch's malpractice action.

The case went to trial in 1976, and a jury returned a verdict in favor of Couch in the amount of $510,000. Judgment, with interest, was entered for more than $600,000. MPC paid $100,000 towards the judgment and Hartford contributed $550,000. Hartford declined, however, to cover the full judgment exclusive of MPC's payment and Benkert still owes Couch a balance of over $100,000.

Benkert thereafter claimed that MPC should never have permitted the malpractice case to go to trial because of the probability of an adverse jury verdict in excess of the MPC policy limits. He accused MPC of negligently and in bad faith refusing to settle the case within the limits of its $100,000 primary policy. In return for Couch's covenant not to sue Benkert for the unpaid balance of Couch's judgment, Benkert assigned to Couch his right of action against MPC for its alleged bad faith failure to settle. Benkert also assigned the cause of action to Hartford. However, Benkert retained his claims for exemplary damages and mental distress.

Benkert, Couch and Hartford then brought this diversity action against MPC.

Their complaint set forth four claims which can be summarized as follows:

Count I: Benkert's cause of action for emotional and physical distress arising from MPC's failure to settle with Couch.

Count II: Couch's cause of action as assignee of Benkert's claim against MPC for MPC's negligent and bad faith failure to settle.

Count III: Hartford's cause of action as assignee of Benkert's claim against MPC for MPC's negligent and bad faith failure to settle.

Count IV: Hartford's cause of action against MPC for MPC's negligent and bad faith failure to settle.

MPC moved the district court, under Fed. R.Civ.P. 12(c), for judgment on the pleadings with respect to Counts I, II and III of the plaintiffs' complaint. The court denied the motion as to Count I and took the remainder of the motion under advisement pending the Michigan Supreme Court's decision of the district court's certification to it of issues of state law relating to all three Counts. When the Michigan Supreme Court declined to grant the petition for certification, the district court, 635 F.Supp. 1466, upon reconsideration of its earlier decision denying dismissal of Count I, reversed itself and granted defendant's motion to dismiss Benkert's complaint. In addition, the court ordered dismissal of Counts II and III, concluding that Benkert's causes of action against MPC were not assignable. The plaintiffs now appeal the district court's judgment of dismissal of all three counts.

## II.

Benkert's Count I claim against MPC for damages is based upon two theories of liability. First, Benkert seeks to recover in contract all damages which can reasonably be said to have been contemplated by MPC and him at the time MPC issued Benkert's primary insurance policy including damages for mental distress and exemplary damages. Second, Benkert argues that MPC tortiously breached a duty to settle Couch's claims within its policy limits and

that he is entitled to all damages proximately caused by the breach. The district court's order dismissing Count I of plaintiff's complaint was based upon the authority of *Valentine v. General American Credit, Inc.*, 420 Mich. 256, 362 N.W.2d 628 (1984), and *Kewin v. Massachusetts Mutual Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1981). We agree with the district court's analysis and disposition of the Count I claim and we affirm.

### A.

Analysis of Benkert's theory of entitlement to exemplary damages and damages for mental anguish flowing from MPC's alleged bad faith refusal to settle Couch's malpractice claim must begin with *Kewin*. In *Kewin*, the plaintiffs sought both exemplary damages and damages for mental anguish as the result of the defendant insurer's bad faith refusal to pay the plaintiff's entire claim under the terms of his disability income policy. The *Kewin* court began by citing the rule of *Hadley v. Baxendale*, providing that damages recoverable for a breach of contract are those that

may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it.

9 Exch. 341, 354, 156 Eng. Rep. 145 (1854). Despite the far-reaching potential of that language in *Hadley*, the court noted that it had previously allowed damages for mental distress in a breach of contract action only where the contract was of a "personal" and not a "commercial" nature. The court was referring to *Stewart v. Rudner*, 349 Mich. 459, 84 N.W.2d 816 (1957), in which it held that mental distress damages were "within the contemplation of the parties" in a case in which a physician breached a contract to deliver a child by caesarean section and the child died. *Stewart*, 349 Mich. at 472, 84 N.W.2d 816. The court reasoned that such a contract involves "rights we cherish, dignities we respect, emotions recognized by

all of us as both sacred and personal." *Id.,* at 469, 84 N.W.2d 816.

The *Kewin* court characterized the plaintiff's disability income policy in that case as a commercial contract because "[n]o reason appears to conclude that either party contemplated any special damages, and certainly none can be said to flow naturally from the breach." *Kewin,* 409 Mich. at 418, 295 N.W.2d 50.

> Insurance contracts for disability income protection do not come within the reach of *Stewart.* Such contracts are commercial in nature: they are agreements to pay a sum of money upon the occurrence of a specified event.... The damage suffered upon the breach of the agreement is capable of adequate compensation by reference to the terms of the contract. We recognize that breach of the insurance contract, as with almost any agreement, results in some annoyance and vexation. But recovery for those consequences is generally not allowed, absent evidence that they were within the contemplation of the parties at the time the contract was made.

*Id.* at 416–17, 295 N.W.2d 50.

*Kewin* also barred recovery of exemplary damages in a breach of commercial contract action. "In Michigan, exemplary damages are recoverable as compensation to the plaintiff, not as punishment of the defendant." *Id.* at 419, 295 N.W.2d 50.

> In commercial contract situations, unlike the tort and marriage contract actions, the injury which arises upon a breach is a financial one, susceptible of accurate pecuniary estimation. The wrong suffered by the plaintiff is the same, whether the breaching party acts with a completely innocent motive or in bad faith....
>
> We hold that absent allegation and proof of tortious conduct existing independent of the breach, ... exemplary damages may not be awarded in common law actions brought for breach of a commercial contract.

*Id.* at 419–20, 295 N.W.2d 50 (citations omitted).

Subsequently, in *Valentine v. General American Credit, Inc.,* 420 Mich. 256, 362 N.W.2d 628 (1984), a case involving a claim for mental distress damages arising out of the breach of an employment contract, the Michigan Court reaffirmed the *Kewin* analysis.

> Under the rule of *Hadley v. Baxendale,* literally applied, damages for mental distress would be recoverable for virtually every breach of contract.

*Id.* at 260, 362 N.W.2d 628.

> Rather than look to the foreseeability of loss to determine the applicability of the exception, the courts have considered whether the contract "has elements of personality" and whether the "damage suffered upon the breach of the agreement is capable of adequate compensation by reference to the terms of the contract."

*Id.* at 262, 362 N.W.2d 628 (*citing, Kewin,* 409 Mich. at 417, 295 N.W.2d 50).

In dismissing Count I of the plaintiffs' complaint, the district court held that Benkert had failed to state a claim for exemplary and mental distress damages stemming from MPC's alleged breach of its contract to settle in good faith Couch's malpractice action against Benkert because the policy issued by MPC was a purely commercial contract under the *Kewin–Valentine* analysis. We agree. Benkert's malpractice policy was a commercial contract in which MPC agreed to defend Benkert if he were sued for malpractice and to pay such judgment as might be awarded against the insured, up to the limits of the agreed coverage. The contract had none of the "elements of personality" and involved none of "the emotions both sacred and personal" that are implicated in a contract with a physician for the safe caesarean section delivery of a child, involving, as it does, a risk to human life. *See Stewart v. Rudner, supra.* The financial loss likely to be within the contemplation of the parties resulting from an insurance company's failure to settle in good faith a malpractice claim that results in an adverse money judgment against its insured physician is simply not comparable to the human grief

and personal suffering likely to follow naturally from the loss of a child's life because of the attending physician's breach of a contract to properly perform a caesarean section delivery. Dr. Benkert's policy was a contract to pay an ascertainable sum certain and any damage occasioned by its breach "is capable of adequate compensation by reference to the terms of the contract." [1] *Valentine*, 420 Mich. at 262, 362 N.W.2d 628.

### B.

◼ The district court also dismissed Dr. Benkert's claim that MPC tortiously breached a duty to settle the Couch claim within policy limits. Again, the court relied upon the authority of *Kewin* which held that

> Absent allegation and proof of *tortious conduct existing independent of the breach*, ... exemplary damages may not be awarded in common-law actions brought for breach of commercial contract.

*Kewin*, 409 Mich. at 420–21, 295 N.W.2d 50 (citations omitted) (emphasis added).

Subsequent to *Kewin*, the Michigan Supreme Court held that an insurer's dilatory handling of its client's claim constituted "bad faith," but did not create a cause of action separate from the underlying contract. *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 608, 374 N.W.2d 905 (1985).

As the district court found, Dr. Benkert has failed to identify a duty existing apart from the contractual obligations that arise from the terms of the insurance contract itself. MPC's alleged acts of negligence and bad faith include its failure to settle within the policy's limits and to adequately evaluate the strength of Couch's claim, as well as its disregard for the interests of Benkert. But all of these acts and omissions are based upon duties arising solely from the contract and not from any independent tortious conduct. Damages for MPC's alleged negligence are therefore unavailable.

### III.

◼ The district court dismissed Counts II and III of the plaintiffs' complaint which are, respectively, Couch's and Hartford's claims as assignees of Benkert for MPC's bad faith failure to settle. The district court relied upon our holding in *Baker v. Auger*, 709 F.2d 1063 (6th Cir.1983), that the right to sue an insurance company for its bad faith failure to settle is not assignable under Michigan law. We now reexamine our holding in *Baker*, in light of the Michigan Supreme Court's decision in *Commercial Union Ins. Co. v. Liberty Mutual Ins. Co.*, 426 Mich. 127, 393 N.W.2d 161 (1986).

In *Baker*, the plaintiff Sylvia Auger, as next friend of her son, commenced involuntary bankruptcy proceedings against defendant Baker who was unable to meet his obligation to pay Auger's son $200,000 owed the boy under the terms of a prior personal injury consent judgment. Auger sought, in the bankruptcy proceedings, to obtain an assignment of Baker's only asset, his cause of action against his insurance company for its alleged bad faith failure to settle the claim brought by Auger's son. Relying upon a Michigan Supreme Court decision, *Jones v. Hicks*, 358 Mich. 474, 100 N.W.2d 243 (1960), and a federal district court opinion, *Schueler v. Phoenix Assurance Co. of New York*, 223 F.Supp. 643 (E.D.Mich.1963), a panel of this court held that Baker's claim was not assignable. The *Jones* case held that "[t]he general rule is well established ... that a right of action for *fraud* is personal and not assignable." 358 Mich. at 476, 100 N.W.2d 243 (emphasis added). In *Schueler*, a bankruptcy trustee sought to obtain from a debtor the debtor's right to sue the debtor's insurance carrier for its bad faith failure to settle a claim. The court characterized the claim for bad faith failure to settle as a claim sounding in fraud:

> The use of the power [to control settlements] in bad faith, for improper mo-

---

1. We note that the Michigan Court of Appeals has reached the same conclusion in applying the *Kewin* analysis to a professional liability policy covering architects and engineers. *See Stein v. Continental Casualty Co.*, 110 Mich.App. 410, 313 N.W.2d 299 (1981).

tives, or for other purpose than that for which it was granted, would constitute a fraud upon insured and be actionable if injury results to him therefrom.

223 F.Supp. at 645 (*quoting Wakefield v. Globe Indemnity Co.*, 246 Mich. 645, 651, 225 N.W. 643 (1929)), and concluded that "the long recognized rule in this State [is] that an action for damages for fraud may not be prosecuted by an assignee thereof." *Id.* at 645, 225 N.W. 643 (*quoting Jones*, 358 Mich. at 483, 100 N.W.2d 243). From those authorities, the *Baker* panel concluded that a debtor's claim against his insured for bad faith failure to settle a claim against the debtor was not assignable because Michigan law treated it as a claim for fraud. 709 F.2d at 1064.

The district court below applied the *Baker* analysis to the claim Benkert assigned to Couch and Hartford. However, the premise underlying our holding in *Baker*, that a claim for bad faith failure to settle is a claim sounding in fraud, has since been called into question by the Michigan Supreme Court.

In *Commercial Union Ins. Co. v. Liberty Mutual Ins. Co.*, 426 Mich. 127, 393 N.W.2d 161 (1986), the court addressed the nature of a claim for bad faith failure to settle in the context of an equitable subrogation action brought by an excess insurance carrier against a primary insurance carrier. The court affirmed the intermediate appellate court's order which granted a new trial based on the trial court's erroneous "bad faith" instructions. *Commercial Union Ins. Co.*, 426 Mich. at 135–36, 393 N.W.2d 161.[2]

The Michigan Supreme Court held that the trial court's instructions were erroneous in part because they equated bad faith with fraud:

> Contrary to holdings in some other jurisdictions, *bad faith should not be used interchangeably with either "negligence" or "fraud."* Michigan has reached this conclusion in the past. Ac-

cordingly, we define "bad faith" for instructional use in trial courts as arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty.

> Good-faith denials, offers of compromise, or other honest errors of judgment are not sufficient to establish bad faith. Further, claims of bad faith cannot be based upon negligence or bad judgment, so long as the actions were made honestly and without concealment. However, *because bad faith is a state of mind, there can be bad faith without actual dishonsty or fraud.* If the insurer is motivated by selfish purpose or by a desire to protect its own interests at the expense of its insured's interest, bad faith exists, even though the insurer's actions were not actually dishonest or fraudulent.

*Id.* at 136–37, 393 N.W.2d 161 (emphasis added).

In holding that an insured's claim for bad faith failure to settle is not equivalent to a claim sounding in fraud, the court rejected the reasoning of *Wakefield v. Globe Indemnity Co.*, 246 Mich. 645, 225 N.W. 643 (1929). Clearly then, it is now the law in Michigan that an insurer's bad faith failure to settle no longer necessarily "constitute[s] a fraud upon insured ...," *Wakefield*, 246 Mich. at 651, 225 N.W. 643, because bad faith can exist "even though the insurer's actions were not actually dishonest or fraudulent." *Commercial Union Ins. Co.*, 426 Mich. at 137, 393 N.W.2d 161.

Our holding in *Baker v. Auger*, the district court's holding in *Schueler v. Phoenix Assurance Co.*, and Judge Pratt's judgment below, were based on Michigan's "well-established and ... often recognized" general rule "that a right of action for fraud is personal and not assignable." *Jones v. Hicks*, 358 Mich. at 476, 100 N.W. 2d 243 (quoting *Cochran Timber Co. v. Fisher*, 190 Mich. 478, 481, 157 N.W. 282 (1916)). However, on the basis of the Michigan Supreme Court's unequivocal state-

**2.** The trial court's instruction read in part:
The term bad faith as used in these instructions may be defined as involving insincerity, *dishonesty,* disloyalty, *duplicity, or deceitful conduct; it implies dishonesty or concealment.*

An honest mistake of misjudgment is not in and of itself bad faith and no single fact is necessarily decisive of the issue.
*Commercial Union Ins. Co.*, 426 Mich. at 133, 393 N.W.2d 161 (emphasis in original).

ments in *Commercial Union Ins. Co.*, that "bad faith should not be used interchangeably with ... 'fraud,'" and "[b]ecause bad faith is a state of mind, there can be bad faith without actual dishonesty or fraud," *Baker* is no longer controlling.[3]

Accordingly, the district court's order dismissing Benkert's claim in Count I of plaintiffs' complaint is AFFIRMED, and its order dismissing the claims of Couch and Hartford in Counts II and III is REVERSED.

---

**3.** We note that the overwhelming weight of authority favors the assignability of an insured's claims for bad faith failure to settle within the policy's limits. See cases collected in Annotation, 12 A.L.R. 3rd 1158 (1967 and 1987 Supp.).

The court's holding in *Commercial Union Ins. Co.*, 426 Mich. at 136–37, 393 N.W.2d 161, that such a claim is not necessarily a claim for fraud, which is nonassignable, implicitly follows the majority view.