*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF RAYMOND JOSEPH FRISBIE.

---

GUY CONTI, Personal Representative of the
ESTATE OF RAYMOND JOSEPH FRISBIE,

        Appellant,

v

JOYCE LENHART,

        Appellee,

and

REGINA BYRON and KRISTY ANN ALDRICH,

        Interested Parties.

UNPUBLISHED
November 17, 2022

No. 357831
Washtenaw Probate Court
LC No. 17-000955-DA

---

Before: M. J. KELLY, P.J., and RONAYNE KRAUSE and PATEL, JJ.

PER CURIAM.

Guy Conti as Personal Representative of the Estate of Raymond Joseph Frisbie, appeals as of right the probate court's order denying Conti's request to surcharge decedent's daughter, Joyce Lenhart, for transfers of decedent's assets. We affirm.

## I. BACKGROUND

Raymond and Carol Frisbie had six children—Regina, Kristy, Kevin, Joyce, Patrick, and Teresa.[1] On July 5, 2014, Raymond appointed Joyce as his attorney-in-fact under a Durable Power of Attorney for Financial Management (DPOA). On July 18, 2014, Raymond and Carol executed

---

[1] We will refer to the decedent's children by their given names.

the Raymond J. Frisbie and Carol J. Frisbie Joint Living Trust. Joyce used an online program to prepare the trust. The trust designated Joyce as the trustee and sole beneficiary. Regina was designated as the successor trustee and beneficiary in the event of Joyce's death. If both Joyce and Regina died before the surviving grantor, the assets were to be divided equally between the Frisbies' other four children.

In February 2016, Raymond loaned Joyce money from his personal checking account to purchase a home in Fort Wayne, Indiana. Raymond allegedly told Joyce that the loan would be 100% forgiven upon his death because she was the sole beneficiary of the trust.

Carol passed away on May 28, 2016. After Carol's death, Joyce appointed Patrick as the temporary attorney-in-fact under Raymond's DPOA. Raymond passed away on June 13, 2016. After Raymond's death, $345,112.96 was transferred from the trust account to Patrick.

After the Frisbies passed away, Regina challenged the validity of the trust. Ultimately, a stipulated order for intestate proceedings was entered on September, 21, 2017. The order directed that the estate be administered "as though the trust at issue was not valid." Guy Conti was appointed at the independent personal representative. Conti was ordered to investigate all contested transactions, and he was authorized to claw back the value of the transacted funds for any transactions that were deemed inappropriate. This was the final order entered in the trust case, and the matter was closed.

Thereafter, Conti filed an action against Patrick alleging claims of larceny, unjust enrichment, and breach of fiduciary duty for the over $300,000 that he received after Raymond's death. The claim was ultimately settled with the probate court's approval.[2] Regina and Kristy stipulated to the settlement.

Conti also proposed accepting a $10,000 payment from Joyce to settle the estate's claim arising out of her purchase of the Indiana home. But the settlement was not approved. Conti hired special counsel to investigate and prosecute claims against Kevin, Teresa, and Joyce. The estate eventually reached a settlement with Teresa and Kevin.[3]

Conti filed a petition for surcharge against Joyce, requesting a judgment in the amount of $490,112.96 for allegedly improper disposals of the estate's assets. Conti asserted Joyce purported to act as trustee when she (1) used decedent's assets to purchase the Indiana home, (2) transferred the Indiana home to herself, and (3) transferred $345,112.96 to Patrick. Conti maintained the transactions were improper and void because the September 2017 order indicated "the Trust is to be treated as void."

---

[2] In addition to $68,000 that Patrick returned to the estate during the trust litigation, he agreed to pay the estate $40,000 for mutual waivers of all claims, including a waiver of his interest as an heir.

[3] Kevin and Teresa were granted ownership of Raymond's home in full satisfaction of their interests in the estate. In exchange, Teresa and Kevin agreed to pay the estate $70,000.

Joyce denied that any of the transactions were improper or void. She asserted that there was no determination by the trier of fact that the trust was invalid at the time it was created, or that all prior transactions by Joyce as trustee were void. She maintained that her actions as trustee were approved by Raymond and Carol. Joyce further asserted that she transferred funds to Patrick, who was the temporary attorney-in-fact under Raymond's DPOA, at the insistence of her siblings.

Following a two-day evidentiary hearing, the probate court denied the petition to surcharge Joyce. The probate court noted that there was no finding in the prior trust action that the trust was invalid, stating "there was a stipulation to proceed **as if** it was not valid." The probate court found that the challengers had not met their burden to prove Raymond lacked capacity to enter into a valid trust, the funds Raymond gave Joyce to purchase the Indiana home were not owned by the trust, and Joyce was not liable for the sale of the home as a matter of law. The court also found that Joyce did not breach her fiduciary duty when she transferred funds to Patrick after her parents died. This appeal followed.

## II. STANDARDS OF REVIEW

When a probate court sits without a jury, we review its factual findings for clear error. *In In re Conservatorship of Murray*, 336 Mich App 234, 239; 970 NW2d 372 (2021). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. at 239-240 (quotation marks and citations omitted). "We defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *Id*. (quotation marks and citations omitted).

This Court reviews a probate court's decision whether to surcharge a trustee for an abuse of discretion. *Id*. at 240. The "abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (quotation marks and citations omitted). A court acts within its discretion when it "selects one of these principled outcomes." *Id*. (quotation marks and citations omitted).

## III. INTENT

Conti argues the probate court clearly erred by failing to hold that the trust did not reflect the Frisbies' intent. We disagree.

A trust is valid if (1) the settlor has capacity, (2) the settlor intends to create the trust, (3) there is a definite beneficiary, (4) the trustee has duties to perform, and (5) the same person is not sole trustee and sole beneficiary. MCL 700.7402(1). A trust is invalid if it was created by fraud, duress, or undue influence. MCL 700.7406. The plaintiff or proponent in a probate case has the burden to prove his or her case by a preponderance of the evidence. *In re Estate of Wojan*, 126 Mich App 50, 51; 337 NW2d 308 (1983).

Conti does not allege the trust is invalid for lack of capacity,[4] definite beneficiary, trustee duties, or because the trustee was the only beneficiary. Nor does he assert that it was executed under fraud, duress, or undue influence. Instead, he challenges whether the trust was in accord with the settlors' intent, and contends the probate court failed to rule on the issue.

Contrary to Conti's assertions, the probate court found the testimony established "Joyce was attempting to follow her parent's [sic] wishes, which was to make sure that there was enough money to take care of Teresa. They left the trust funds to Joyce with the direction to Joyce that she take care of Teresa."

The probate court's factual findings were supported by the testimony. Although the trust reflected that Joyce was the sole beneficiary, Raymond and Carol intended for Teresa to receive the "lion's share" of the assets to make sure she was taken care of. The Frisbies wanted: (1) Kevin and Teresa to receive their home, (2) Joyce to set aside enough money for Teresa to live on for the rest of her life,[5] and (3) the remainder of the assets to be distributed equally between the other five siblings. Joyce claimed the trust did not specify the primary distribution to Teresa pursuant to her parents' instructions because they did not want Teresa to feel bad that she was receiving more than her siblings. Joyce testified she tried to execute her parents' wishes when she prepared the trust.

Joyce's testimony was corroborated by her siblings who testified that all six children attended an April 2016 family meeting where Raymond and Carol told the children they created a trust with Joyce as the trustee and the sole beneficiary because she knew what they wanted and could execute their wishes privately. Although the Frisbies did not intend for Joyce to keep 100% of their assets, there was no evidence refuting that they intended for Joyce to be the sole beneficiary, that they intended Teresa to receive a larger portion of the assets that the other children, and that they intended Joyce to distribute the assets privately according to their wishes. We are not left with a definite and firm conviction that the probate court made a mistake by finding that the Frisbies intended Joyce to be the sole beneficiary of the trust so she could make sure there was enough money to take care of Teresa according to their wishes.[6]

---

[4] Although he made this argument to the probate court, he has not raised the argument on appeal.

[5] Because of a health condition, Teresa was unable to work.

[6] To the extent Conti contends the probate court should have modified or reformed the trust to conform to Raymond's intent, we find that this argument is unpreserved because it was raised for the first time in his appeal brief. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). This argument is also waived because it was not in his statement of questions presented. *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019); see also MCR 7.212(C)(5) (stating that an appellant's brief must contain "[a] statement of questions involved, stating concisely and without repetition the questions involved in the appeal."). Accordingly, we decline to address this argument.

## IV. FIDUCIARY DUTIES

Conti also argues the probate court clearly erred by finding that Joyce did not breach her fiduciary duties. We disagree.

"In general, the duties imposed on the trustee are determined by consideration of the trust, the relevant probate statutes and the relevant case law." *In re Green Charitable Trust*, 172 Mich App 298, 312, 431 NW2d 492 (1988). A trustee owes a general statutory duty to "administer the trust in good faith, expeditiously, in accordance with its terms and purposes, for the benefit of the trust beneficiaries . . . ." MCL 700.7801; see also *In re Pollack Trust*, 309 Mich App 125, 156, 867 NW2d 884 (2015). A trustee is required to "administer the trust solely in the interests of the trust beneficiaries." MCL 700.7802(1). A trustee must "act as would a prudent person in dealing with the property of another," MCL 700.7803, and "protect the trust property," MCL 700.7810. "To be prudent includes acting with care, diligence, integrity, fidelity and sound business judgment." *In re Green Charitable Trust*, 172 Mich App at 313. "In addition, the courts have imposed on the fiduciary duties of honesty, loyalty, restraint from self-interest and good faith." *Id*.

MCL 700.7901(2)(c) authorizes a probate court to remedy a breach of trust by, among other remedies, compelling "the trustee to redress a breach of trust by paying money, restoring property, or other means," and MCL 700.7901(2)(j) authorizes the probate court to "order any other appropriate relief." MCL 700.7902 provides:

> A trustee who commits a breach of trust is liable to the trust beneficiaries affected for whichever of the following is larger:
>
> (a) The amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred.
>
> (b) The profit the trustee made by reason of the breach.

"[T]he standard of proof for determining breach of duty and the appropriateness of a surcharge is a preponderance of the evidence." *In re Conservatorship of Murray*, 336 Mich App at 246.

Pursuant to common law principles, "trustees may not be liable for mere mistakes or errors of judgment where they have acted in good faith and within the limits of the law and of the trust." *In re Green Charitable Trust*, 172 Mich App at 314. "Good faith" refers to the actor's state of mind and intentions. It reflects the actor's honesty, faithfulness, and exercise of best judgment. See *People v Downes*, 394 Mich 17, 26; 228 NW2d 212 (1975); *Shaffner v Riverview*, 154 Mich App 514, 518; 397 NW2d 835 (1986); Merriam-Webster's Collegiate Dictionary (2003); Black's Law Dictionary (9th ed). "Bad faith" has been defined by our Supreme Court "as arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty." *Commercial Union Ins Co v Liberty Mut Ins Co*, 426 Mich 127, 136; 393 NW2d 161 (1986). "[O]ffers of compromise . . . are not sufficient to establish bad faith." *Id*. at 136-137. Bad faith claims "cannot be based upon negligence or bad judgment, so long as the actions were made honestly and without concealment." *Id*. at 137. But bad faith can exist when the actor "is motivated by selfish purpose or by a desire to protect its own interests at the expense of" those to whom she owes a fiduciary duty. *Id*.

Conti alleges Joyce breached her duty of care, as well as the express terms of the trust, when she transferred over $300,000 to Patrick during Raymond's lifetime.[7] First, the record reflects that the money was not transferred into the trust account, or to Patrick, until *after* Raymond's death. Moreover, it is undisputed Regina and Kristy consented to the transfer to Patrick. In fact, there was testimony that they demanded it. Joyce believed Patrick would execute their parents' wishes. She agreed to initiate the transfer to Patrick as a compromise, which is not sufficient to establish bad faith. *Commercial Union*, 426 Mich at 136-137. Although Joyce had misgivings about the transfer and testified it was against her better judgment, it does not establish bad faith. *Id*. at 137. Further, there was no evidence that Joyce acted secretly or with selfish motivations. *Id*. Joyce complied with the demands of her siblings, who were her parents' intended beneficiaries, and acted solely in their interests.[8]

The probate court was in the best position to assess the witnesses and determine whether Joyce acted in bad faith. Bearing in mind the probate court's unique vantage point, we conclude that the probate court did not clearly err by finding Joyce did not breach her fiduciary duties when she transferred the money to Patrick, and the probate court did not abuse its discretion by declining to surcharge Joyce for the amount of funds transferred.

Affirmed.

/s/ Michael J. Kelly
/s/ Amy Ronayne Krause
/s/ Sima G. Patel

---

[7] Although Conti had also sought to surcharge Joyce for the purchase of the Indiana home and the profit from its sale, Conti has not challenged the probate court's findings regarding the purchase and sale of the home.

[8] When Conti sought approval of the settlement with Patrick, he acknowledged that the trust beneficiaries approved of Patrick's acquisition of the money. This admission on behalf of the estate is additional evidence that Joyce did not act in bad faith.