EQUITABLE LIFE INSURANCE
COMPANY OF IOWA, Plaintiff,

v.

MICHIGAN NATIONAL BANK, Carroll
H. Vannatter, Bette L. Schoolmaster,
and Judith H. Breshnahan, Defendants.

No. G78–372 CA1.

United States District Court,
W. D. Michigan, S. D.

Feb. 8, 1980.

Russell, Ward & Hodgkins, Robert G. Quinn, Jr., Grand Rapids, Mich., for defendants.

## OPINION AND ORDER

DOUGLAS W. HILLMAN, District Judge.

Defendants Michigan National Bank (The Bank) and Carroll H. Vannatter (Vannatter), as co-executors of the estate of Mildred M. Brann, have moved for summary judgment, pursuant to Fed.R.Civ.P. 56, against defendants Bette L. Schoolmaster (Schoolmaster) and Judith H. Bresnahan (Bresnahan), rival claimants for the proceeds of an endowment policy owned by Mrs. Brann at the time of her death. This case originally was brought in May, 1977, as an interpleader action by plaintiff Equitable Life Insurance Co. of Iowa (Equitable), seller of the policy, pursuant to 28 U.S.C. § 1335 and Fed.R.Civ.P. 22(2). Equitable deposited with the Court $11,421.60, the amount payable under the policy, including interest. The parties subsequently agreed to invest $10,000 in U. S. Treasury bills until further order of the Court. On September 22, 1978, Judge Miles issued an order discharging plaintiff from further liability, enjoining any other suits pertaining to the policy, pursuant to 28 U.S.C. § 2361, and awarding attorney's fees and costs of

$632.16 to plaintiff from the funds deposited. This motion for summary judgment was filed January 16, 1979, and a brief in opposition on December 10, 1979.

The endowment policy was sold to Mildred M. Brann on September 6, 1957, and required payment of monthly premiums over a twenty-year term to maturity. The contract stated:

> "Equitable Life Insurance Company of Iowa AGREES TO PAY The Face Amount, SEVEN THOUSAND FIVE HUNDRED Dollars, at its Home Office in the City of Des Moines, Iowa, upon surrender of the policy, to The Insured MILDRED M. BRANN, on the Maturity Date, September 6, 1977, if the Insured is then living; or, upon surrender of the policy and upon receipt at its said office of due proof of the death of the Insured prior to the maturity date, will pay the face amount to The Beneficiary, THOMAS M. BRANN, husband of the Insured, if living, otherwise JUDITH A. HENRICKSON AND BETTE L. HENRICKSON, nieces of the Insured, or the survivor."

Mrs. Brann maintained the policy, and on or about July 7, 1977, plaintiff wrote to inform her of its impending maturity on September 6, 1977, and to suggest "various options" under which the proceeds due could be reinvested or paid out over time, rather than in one lump sum. Mrs. Brann never responded. Plaintiff subsequently was unable to contact Mrs. Brann or deliver a check for the amount of the policy. No instructions from the insured were received by Equitable concerning beneficiaries. Mr. Brann had died before the maturity date. In February, 1978, Plaintiff learned Mrs. Brann had died on November 25, 1977.

The Bank and Vannatter move for summary judgment on the ground there is no genuine issue of material fact and that they are entitled to the proceeds of the policy, as executors of the insured's estate, as a matter of law. They point to the language of the policy, quoted above, which they say entitles Mrs. Brann's estate to the money because she was living at the date of maturity. They argue that the provision for payment to the named beneficiaries was expressly contingent on the receipt by Equitable of due proof of the death of the insured *prior* to the maturity date, which did not occur here. Although the insured did not surrender the policy after maturity, as apparently required by its terms, it is said surrender is only for the protection of the insurer and cannot condition the existence of Mrs. Brann's right to payment.

The named beneficiaries oppose the motion for summary judgment on the ground an issue of material fact exists in this case, namely, who are entitled to the proceeds of the policy, the language of which they maintain is ambiguous. Specifically, they argue that Mrs. Brann failed to satisfy the terms of the contract by not surrendering the policy for payment, thereby leaving the policy in effect. They bolster this view by reference to the Optional Maturity Date Provision offered Mrs. Brann, under which she could have elected to postpone the maturity date and continue in effect the beneficiary designation. Although no affirmative election was made in this case, as required by Equitable, the policy beneficiaries maintain that the existing terms of the policy must remain in effect until the insured elects an option or, alternatively, surrenders the policy for payment, effectively electing *not* to extend the policy with the beneficiary designation intact. Because there was no surrender, the "maturity transaction" was not completed and the policy beneficiaries, not Mrs. Brann's estate, are entitled to the proceeds of the policy.

In support of their construction of the terms of the policy, The Bank and Vannatter cite *Levy & Co. v. Van Hagen*, 69 Ala. 17 (1881), in which the Alabama Supreme Court construed an endowment policy's terms to cut off the rights of named beneficiaries upon the insured's living to the maturity date of the policy. The rights of the beneficiary were found to be contingent on notice and proof of his death, and in any event ceased upon the insured's attaining the age of 45, the maturity date. In several respects, however, the facts distinguish that

case from the one before the Court. In *Levy & Co.*, the policy was owned and paid for by the beneficiary, not the insured, and it was she who contracted for its terms. Also, the insured was still alive at the time of the suit, so the Alabama court was not faced with differing outcomes depending on whether the contingency of death occurred before or after maturity. The *Levy & Co.* policy was more explicit in its terms. Finally, and most important, the Alabama Supreme Court isolated as the central issue the intention of the parties: "So this case comes at last to the inquiry, what is the proper interpretation of the policy? What did the parties intend, as shown by the language employed?" *Id.*, at 21. It is noted that the resolution of that issue, involving a policy clearer in its terms than the one here, went to trial and was appealed to the highest court in the state—where it was reversed—and was not, demonstrably, susceptible of summary judgment.

The Policy beneficiaries raise significant questions concerning the operation of the terms of the policy. On its face, the document may only grant rights to them in the event of the insured's death before the maturity date, cutting them off once that point is reached, whether or not the insured subsequently dies. However, this termination of rights may possibly be contingent on the completion of the "maturity transaction," requiring surrender. It is not clear what effect, if any, the right to elect an option to postpone maturity has on the policy. The preliminary question of whether ambiguity does exist is a question of law to be decided by the court. It is not necessary to give a strained reading to the terms of the contract to find ambiguity on these points.

■■■ An insurance policy is a contract and must be interpreted according to its plain meaning. Courts should not read ambiguity, doubt, and equivocation into words of common meaning and understanding. *Elston-Richards Storage Co. v. Indemnity Insur. Co.*, 194 F.Supp. 673 (W.D.Mich.1960). Nevertheless, where ambiguity exists, as here, a court must be free to interpret the pertinent language. "Worship of the literal should not overcome common sense or be used to bring about an absurdity if it can be avoided." *Mondou v. Lincoln Mutual Casualty Co.*, 283 Mich. 353, 358, 278 N.W. 94, 96 (1938). As with any other contract, the intention of the contracting parties must govern.

Specifically, the Court poses the following questions:

1) Did Mildred Brann *intend* her named beneficiaries to receive the proceeds of the policy only if she died before the maturity date? Did she intend to cut them off if she was living at the date of maturity but subsequently died?

2) Do the terms of the policy make the rights of the beneficiaries contingent upon the insured's death prior to maturity?

3) When did the insured become entitled to the face value of the matured policy? Were her rights contingent upon surrender of the policy, or was that merely a condition of payment?

4) If there was no surrender of the policy after maturity, or alternatively, no election of options to defer payment, do the terms of the policy, including the beneficiary designation, continue in force?

These questions are not regarded as of equal weight. They are not necessarily listed in order of importance nor are they meant to be exclusive of other issues that may exist in the case. However, they do highlight genuine issues of material fact which remain to be decided.

■■■ A court may not grant a motion for summary judgment if there remain genuine questions as to state of mind, especially where relevant, as here, to the intent of the parties to an ambiguous contract. *See Cram v. Sun Insur. Office, Ltd.*, 375 F.2d 670 (4th Cir. 1967); *see also New England Mutual Life Insur. Co. v. Null*, 554 F.2d 896 (8th Cir. 1977); 10 Wright & Miller, *Fed. Practice and Procedure*, § 2730.

On the basis of a careful consideration of the relevant facts in this case, and constru-

ing them in a light most favorable to the moving party, the Court holds the executors have failed to meet their burden of proof and that genuine issues of material fact exist which prevent granting the motion for summary judgment, as a matter of law.

IT IS SO ORDERED.