**MEIJER, INC., Plaintiff,**

v.

**GENERAL STAR INDEMNITY CO., Defendant.**

No. 1:92–CV–149.

United States District Court, W.D. Michigan, S.D.

May 7, 1993.

Paul T. Sorensen, Robert J. Jonker, Valerie Ann Pierre Simmons, Warner, Norcross & Judd, Grand Rapids, MI, Eugene R. Anderson, Mark E. Klein, Anderson, Kill, Olick & Oshinsky, PC, New York City, for plaintiff.

William S. Farr, Joel E. Krissoff, John R. Oostema, Farr & Oosterhouse, Grand Rapids, MI, Kevin Robert McDermott, Schottenstein, Fox & Dunn, Columbus, OH, for defendant.

## OPINION

BENJAMIN F. GIBSON, Chief Judge.

Pending before the Court is the defendant's motion for summary judgment and the plaintiff's cross-motion for partial summary judgment on Counts I and II of its amended complaint. For the reasons stated below, the plaintiff's motion is granted and defendant's motion is denied.

### I.

Effective March 1, 1990, defendant General Star Indemnity Company ("GenStar") sold the plaintiff a comprehensive general liability policy and an excess insurance policy. Under the terms of the first policy, GenStar obligated itself to indemnify Meijer for all sums in excess of a deductible of $175,000 and up to $1,000,000 per occurrence. Under

the terms of the excess insurance policy, GenStar obligated itself to pay all sums for which Meijer may become liable up to $10,000,000 per occurrence in excess of the $5,000,000 provided by Meijer's underlying umbrella policy. All negotiations with respect to the sale of both policies took place at Meijer's corporate headquarters in Grand Rapids, Michigan, and GenStar's agent received the premiums at its office in Grand Rapids.

On June 16, 1990, while both policies were in effect, Leroy A. Spangler sustained bodily injury when two Meijer security guards attempted to arrest him for shoplifting at a store located in Columbus, Ohio. In December of 1990, a civil action was commenced against Meijer and the two security guards in the Franklin County Court of Common Pleas. The matter proceeded to trial, and a jury verdict against Meijer and one of the security guards was returned on December 23, 1991.

The verdict against Meijer was substantial. Compensatory damages of nearly $13,000,000 were awarded. In addition, the jury found that punitive damages and attorneys' fees should be awarded. On February 28, 1992, the Franklin County Court of Common Pleas awarded punitive damages in the amount of $525,000 and attorneys' fees in the amount of $337,500.

By letter, dated January 24, 1992, GenStar informed Meijer that it would not pay any portion of the punitive damages or attorneys' fees awards. On February 12, 1992, GenStar advised Meijer that it had retained an attorney to handle Meijer's appeal, but that the retained counsel would not represent Meijer on its appeal of the award of punitive damages and attorneys' fees because they were not covered under the excess insurance policy.

Meijer retained its own attorney to appeal the punitive damages and attorneys' fees issues. On March 18, 1992, GenStar, without the approval of Meijer, reached a settlement with Spangler on the compensatory damages award. Two days later, reversing its position on representation, GenStar insisted that its attorney handle Meijer's appeal of those issues. Meijer objected and asserted that its attorney should handle the appeal. On June 16, 1992, without GenStar's participation, Meijer reached a separate settlement with regard to the punitive damages and attorneys' fees awards. Pursuant to that settlement, Meijer paid $850,000.

Meijer filed this action against GenStar because it refused to cover the award of punitive damages and attorneys' fees. Meijer seeks both a declaration that it is entitled to such coverage and damages for the costs it incurred due to GenStar's alleged failure to pay claims in accordance with the terms of the insurance policies. Count III of the amended complaint alleges bad faith on the part of GenStar in its role as an insurer.

## II.

Summary judgment is appropriate only where no genuine issue of fact remains to be decided so that the moving party is entitled to judgment as a matter of law. *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). There is no material issue of fact for trial unless, in viewing the evidence in favor of the nonmoving party, a reasonable fact finder could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party then must come forward with specific facts showing a material issue of fact on an issue which the nonmoving party will bear the burden of proof at trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential issue of his claim, summary judgment is appropriate. *Id.*

### III.

This is an action brought by a Michigan corporation against a Connecticut corporation seeking to recover on an insurance policy for an incident that occurred in Ohio. This Court must determine which state's substantive law applies to this action before it decides the merits of the plaintiff's claims. A federal court, sitting in diversity, must apply the choice-of-law principles of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Insurance contracts are subject to the same rules as other contracts. Courts must interpret contracts to effectuate the intent of the parties. *Insurance Co. of North America v. Forty–Eight Insulations, Inc.*, 451 F.Supp. 1230 (E.D.Mich.1978), *aff'd*, 633 F.2d 1212 (6th Cir.1980); *Eghotz v. Creech*, 365 Mich. 527, 530, 113 N.W.2d 815 (1962). The parties' intent is determined by the plain meaning of the policy language. *Equitable Life Insurance Co. v. Michigan National Bank*, 484 F.Supp. 1176, 1178 (W.D.Mich. 1980); *Henry v. J.B. Publishing Co.*, 54 Mich.App. 409, 412–13, 221 N.W.2d 174, 175 (1974).

Under Michigan law the nature and effect of a contract are determined by the law of the place where the contract was made. *E.g., Forty–Eight Insulations, Inc., supra; Morbark Industries, Inc. v. Western Employers Ins. Co.*, 170 Mich.App. 603, 429 N.W.2d 213 (1988), *appeal denied*, 432 Mich. 896 (1989). A contract is deemed to have been made in the state where the last act necessary to create a binding agreement occurred. *Forty–Eight Insulations, Inc., supra; Chrysler Corp. v. Insurance Co. of North America*, 328 F.Supp. 445, 448 (E.D.Mich.1971). Usually an insurance contract is made in the place where the insurer countersigns the policy. *Morbark Indus.*, 170 Mich.App. at 615, 429 N.W.2d 213. In the present case, the policies were negotiated and delivered in Michigan but countersigned in Illinois. Therefore, Illinois law would govern this dispute.

However, if a contract is to be performed in a place other than where it was made, the law of the place of performance governs. *George Realty Co. v. Gulf Refining Co.*, 275 Mich. 442, 451, 266 N.W. 411 (1936); *Byjelich v. John Hancock Mut. Life Ins. Co.*, 324 Mich. 54, 36 N.W.2d 212 (1949); *Podlaha v. Management Recruiters International, Inc.*, 171 Mich.App. 1, 429 N.W.2d 622 (1988). If a federal district court can find no Michigan case law that has decided the specific choice of law issue before it, it may apply the rule which the Michigan Supreme Court would probably apply if it were presented with the issue. *Papizzo v. O. Robertson Transp., Ltd.*, 401 F.Supp. 540, 543 (E.D.Mich.1975).

In *Liberty Mutual Ins. Co. v. Vanderbush Sheet Metal Co.*, 512 F.Supp. 1159, 1168 (E.D.Mich.1981), the court analyzed the term "state of performance" under Michigan law to determine the applicable law in a contract action. The court cited several cases for the proposition that generally "state of performance" meant "the state in which the party who had allegedly breached the contract was obliged to perform." *Id.* at 1167. The court also noted other Michigan case law identifying several possible considerations, including that the relevant state may be where "the other party was obliged to perform," where a creditor resides in a contract to pay money, the site of a construction project in a surety agreement, or where an indemnitee is found liable in an indemnity contract. *Id.* at 1167–68. As to an indemnity contract, the court observed problematically that an indemnitee could be found liable in various states with "no single state where the indemnity clause was to be performed." *Id.* at 1168. The *Liberty Mutual* court concluded that none of the cases "explained the rationale of the 'state of performance' rule or of its application in specific situations" and that it was "uncertain how the Michigan Supreme Court would apply it." *Id.* at 1168. Ultimately, however, the court applied Michigan law after it reviewed the insurance contract relating to the Michigan construction project because it determined that the parties would have selected Michigan law had they considered it.

In *Chrysler Corp. v. Skyline Industrial Services, Inc.*, 199 Mich.App. 366, 372–75, 502

N.W.2d 715, 719–20 (Mich.Ct.App.1993), the court analyzed and decided a conflict of laws issue where a contract for painting services included clauses for both indemnification for damages for injured workers and application of Michigan law, but where the local law of the place of injury precluded enforcement of the indemnification clause. The court approvingly utilized the Restatement (Second) of Conflict of Laws Sections 187–88 (1971). Section 188 provides:

(1) The rights and duties of the parties with respect to the issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties ... the contacts to be taken into account applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiating the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Section 6, referred to in Section 188, provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

The *Skyline* court specifically referred to comment c to Section 188 which deals with the purpose of a state's contract rule and provides:

[T]he purpose sought to be achieved by the contract rules of the potentially interested states, and the relation of these states to the transaction and the parties, are important factors to be considered in determining the state of most significant relationship. This is because the interest of a state in having its contract rule applied in the determination of a particular issue will depend upon the relation of the state to the transaction and the parties. So the state where a party to the contract is domiciled has an obvious interest in the application of its contract rule designed to protect that party against the unfair use of superior bargaining power. And a state where a contract provides that a given business is to be pursued has an obvious interest in the application of its rule designed to regulate or deter that business practice....

Whether an invalidating rule should be applied will depend, among other things, upon whether the interest of the state in having its rule applied to strike down the contract outweighs in the particular case the value of protecting the justified expectations of the parties and upon whether some other state has a greater interest in the application of its own rule.

The *Skyline* court also relied on Section 202 which provides:

(1) The effect of illegality upon a contract is determined by the law selected by application of the rules of §§ 187–188.

(2) When performance is illegal in the place of performance, the contract will usually be denied enforcement.

Although the *Skyline* court did not refer to Restatement (Second) of Conflict of Laws Section 193, the court's use of Sections 187–

88 and 202 recommends considering Section 193. Section 193 provides:

> The validity of a contract of fire, surety, or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local of the other state will be applied.

Comment b to Section 193 further provides:

> The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done . . . include . . . where the policy covers a group of risks that are scattered throughout two or more states.

Comment d to Section 193 discusses where the local law of the state of the principal location of the insured risk will not be applied:

> This may be so, for example, when the contract would be invalid under the local law of the state of principal location but valid under the local law of another state with a close relation to the transaction and the parties. In such a situation, the local law of the other state should be applied unless the value of protecting the expectations of the parties by upholding the contract is outweighed in the particular case by the interest of the state of principal location in having its invalidating rule applied.

■ In the present case, significant aspects of the parties' contractual duties and contacts occurred in Michigan. The parties negotiated the policies in Michigan. Meijer was obligated to pay premiums for this coverage, which it paid from its corporate headquarters in Grand Rapids, Michigan. GenStar was required to pay on behalf of Meijer "all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . ." Payment would occur in Michigan. GenStar also had the "right and duty to defend any suit" against Meijer under the CGL insurance; under the excess liability policy, GenStar had only the "opportunity to associate" with the insured in the investigation, defense, and settlement of a claim. GenStar's defense could occur in Michigan or other states where Meijer did business and was sued.

The policies also provided coverage in more than one state. As a company predominantly based and located in Michigan, Meijer has a more significant presence in Michigan than in Ohio. Michigan has an interest in assuring that its citizens receive the contractual benefits for which they negotiated without fear that the law of a foreign jurisdiction will invalidate them. Michigan law does not permit punitive damages. *Kewin v. Mass. Mutual Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980). Ohio law permits punitive damages, but does not permit insurance for them. Ohio Rev.Code § 3937.-182(B). Ohio has an interest, as a matter of social policy, in not allowing tortfeasors who warrant punitive damages to avoid the financial consequences of their misdeeds by shifting the pecuniary pinch to their insurers. However, Michigan has a paramount interest in not subjecting its citizens to an uninsurable risk of punitive damages where it does not expose its citizens even to the risk of punitive damages. The Court finds that the choice-of-law issue in this case is close, but that on balance Michigan law should control the dispute.

■ The policies provided coverage for damages because of bodily injury without any explicit exclusion for punitive damages. The parties do not dispute that no provision in either policy excludes coverage for either punitive damages or attorneys' fees. An unambiguous contract is to be construed by the plain meaning of its terms. *William C. Roney & Co. v. Federal Ins. Co.*, 674 F.2d 587, 589 (6th Cir.1982). Moreover, an insurance company bears the burden of establishing that a claim is excluded from coverage offered by a policy. *Fresard v. Michigan Millers Mut. Ins. Co.*, 414 Mich. 686, 694, 327 N.W.2d 286 (1982). Based upon the plain

language of the policies, therefore, coverage exists for all damages because of bodily injury. Therefore, unless the public policy of this state prohibits an insured from receiving payment from an insurer for punitive damages and attorneys' fees, Meijer should receive payment from GenStar.

No Michigan case has squarely addressed whether an insured should be permitted to recover punitive damages and attorneys' fees from an insurer. Nevertheless, it appears that Michigan law permits recovery. In *Ford Motor Co. v. Northbrook Ins. Co.*, 838 F.2d 829 (6th Cir.1988), the Sixth Circuit did not specifically decide whether an insurance policy may cover punitive damages under Michigan law. However, it implicitly recognized such coverage in finding that the district court properly granted Ford's motion for summary judgment after it demonstrated that a disputed insurance policy covered punitive damages for automotive products liability. *Id.* at 831, 834.

To hold that punitive damages are not recoverable would create, in effect, an exclusion for which the parties did not negotiate and allow insurance companies to collect premiums for coverage of a risk that they voluntarily assumed and then escape their obligation to pay on a claim by a mere judicial declaration that the contract is void by reason of public policy. *See American Home Assurance Co. v. Safway Steel Prods. Co.*, 743 S.W.2d 693, 701 (Tex.Ct.App.1987). Under Michigan law, insurers may limit the risks that they elect to assume, but they must clearly express limitations on coverage and any failure to do so is construed against the drafting insurer and in favor of finding coverage under the policy. *Wielinga v. American Way Life Ins. Co.*, 189 Mich.App. 359, 473 N.W.2d 730, *appeal denied*, 439 Mich. 894, 478 N.W.2d 437 (1991); *Norgan v. American Way Life Ins. Co.*, 188 Mich.App. 158, 469 N.W.2d 23, *appeal denied*, 439 Mich. 902, 478 N.W.2d 649 (1991). No reason exists under Michigan law for this Court to aid an insurer that fails to exclude coverage for punitive damages.

Given the *Ford Motor* decision and this Court's reluctance to release insurance companies from their obligations, the Court holds that Michigan law permits insurance coverage for punitive damage awards. Therefore, the plaintiff's motion for summary judgment on Count I and Count II, with respect to the question of liability only, of its amended complaint is granted.

## IV.

 Count III of the amended complaint alleges that GenStar has acted in bad faith. "If an insurer is motivated by a selfish purpose or a desire to protect its own interests at the expense of its insured's interest, bad faith exists ...." *Commercial Union Ins. Co. v. Liberty Mutual Ins. Co.*, 426 Mich. 127, 137, 393 N.W.2d 161 (1986). The Michigan Supreme Court has identified twelve factors that are relevant when determining whether bad faith exists on the part of an insurer.

(1) failure to keep the insured fully informed of all developments in the claim or suit that could reasonably affect the interests of the insured;

(2) failure to inform the insured of all settlement offers that do not fall within the policy limits;

(3) failure to solicit a settlement offer or initiate settlement negotiations when warranted under the circumstances;

(4) failure to accept a reasonable compromise offer of settlement when the facts of the case or claim indicate obvious liability and serious injury;

(5) rejection of a reasonable offer of settlement within the policy limits;

(6) undue delay in accepting a reasonable offer to settle a potentially dangerous case within the policy limits where the verdict potential is high;

(7) an attempt by the insurer to coerce or obtain an involuntary contribution from the insured in order to settle within the policy limits;

(8) failure to make a proper investigation of the claim prior to refusing an offer of settlement within the policy limits;

(9) disregarding the advice or recommendation of an adjuster or attorney;

(10) serious and recurrent negligence by the insurer;

(11) refusal to settle a case within the policy limits following an excessive verdict when the chances of reversal on appeal are slight or doubtful; and

(12) failure to take an appeal following a verdict in excess of the policy limits where there are reasonable grounds for such an appeal, especially where trial counsel so recommended.

*Id.* at 138–39, 393 N.W.2d 161. These factors are not exclusive and no single factor is decisive. *Id.* at 137, 393 N.W.2d 161. In applying these factors, it is inappropriate to review the conduct of the insured with hindsight. *Id.* at 139, 393 N.W.2d 161. Moreover, "[g]ood-faith denials, offers of compromise, or other honest errors of judgment are not sufficient to establish bad faith." *Id.* at 136–37, 393 N.W.2d 161.

Assuming that there was a good-faith dispute over whether punitive damages were covered by the insurance policies at issue in the present case, a rational trier of fact could still find bad faith on the part of GenStar. GenStar excluded Meijer from settlement negotiations with the Spangler plaintiffs and unilaterally negotiated a settlement. GenStar also refused to negotiate a settlement that would take into account the punitive damages and attorneys' fees awards and retained an attorney to appeal just the award of compensatory damages. Moreover, once the compensatory damages settlement was reached, GenStar attempted to prevent Meijer's retained attorney from handling the appeal of the punitive damages and attorneys' fees issues. A rational trier of fact could find that such actions were undertaken to advance GenStar's interests at the expense of Meijer's interest. Therefore, summary judgment is inappropriate on this claim.

### V.

For the reasons stated above, the plaintiff's motion for partial summary judgment is granted on Count I and Count II, with respect to the question of liability only, of its amended complaint and the defendant's motion for summary judgment is denied.