61 F.3d 903
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MEIJER, INCORPORATED, a Michigan corporation, Plaintiff-Appellee,
v.
GENERAL STAR INDEMNITY COMPANY, a Connecticut corporation,
Defendant-Appellant.
 No. 94-1152.
 United States Court of Appeals, Sixth Circuit.
 July 21, 1995.
 
 1
 Before: NORRIS and DAUGHTREY, Circuit Judges; FEIKENS, District Judge.*
 
 OPINION
 
 2
 FEIKENS, District Judge.
 
 
 3
 Defendant-Appellant General Star Indemnity Company ("General Star") appeals the grant of summary judgment in favor of Plaintiff-Appellee Meijer, Incorporated ("Meijer"). In that judgment General Star was ordered to indemnify Meijer for judgments against it for punitive damages and attorneys' fees.
 
 I. Background
 
 4
 Meijer is a Michigan corporation; its principal place of business is located in Grand Rapids, Michigan. It is engaged in the retail sale of groceries and other merchandise to the general public in stores in Michigan and elsewhere. General Star is a Connecticut corporation; its principal place of business is located in Stamford, Connecticut. At all relevant times, General Star was engaged in the business of selling standard-form primary liability and excess liability insurance policies in Michigan.
 
 
 5
 Effective March 1, 1990, General Star sold to Meijer a comprehensive general liability insurance policy ("CGL Policy") and an excess insurance policy ("Excess Policy"). In the Excess Policy, General Star obligated itself to pay all sums which Meijer might become legally obligated to pay with respect to any claims or actions by third parties alleging the liability of Meijer for damages because of bodily injury or personal injury, except as specifically excluded.[1] The CGL Policy obligated General Star to investigate claims or actions brought against Meijer, to defend it and to indemnify it for all sums that Meijer might become legally obligated to pay, in excess of a deductible of $175,000 and up to $1,000,000 for each occurrence, as to any such claims or actions by third parties alleging the liability of Meijer for damages. The CGL and the Excess policies are both "all risk" policies; this means that any risk not specifically and unambiguously excluded is covered. Neither policy contains an exclusion for liability for punitive damages or attorneys' fees, although they contain among others numerous specifically stated exclusions, such as exclusions for:
 
 
 6
 . incidental contracts
 
 
 7
 . third-party beneficiary contract actions for bodily injury arising out of a project for a public authority
 
 
 8
 . fire legal liability coverage
 
 
 9
 . certain property damage coverage
 
 
 10
 . certain types of medical malpractice coverage
 
 
 11
 . certain watercraft liability coverage
 
 
 12
 . certain employment practices
 
 
 13
 . liability based on pollution or asbestos claims
 
 
 14
 All negotiations with respect to the sales of the policies took place at Meijer's corporate headquarters in Grand Rapids, Michigan. The policies were countersigned by the appropriate General Star personnel in Illinois. Meijer paid all premiums from its headquarters and General Star received the premiums at its office located in Grand Rapids, Michigan.
 
 
 15
 On January 31, 1992, Meijer filed a lawsuit in the 17th Judicial Circuit Court of Michigan against General Star, claiming that General Star was legally obligated to provide coverage for and pay a punitive damage award, including attorneys' fees, entered against Meijer in an Ohio personal injury action[2] ("Spangler" action). Meijer sought a declaratory judgment and monetary relief based on breach of contract. General Star removed[3] the action to the United States District Court for the Western District of Michigan on February 26, 1992.[4]
 
 
 16
 The parties subsequently filed cross-motions for summary judgment. General Star argued that the issue of insurability of the Spangler action punitive damages award should be governed by the law and public policy of either Ohio (where it alleged the coverage-triggering event occurred and the personal injury lawsuit was filed) or Illinois (where the insurance contract was "made"). Meijer contended that Michigan was the place where the contract was to be performed, that Michigan's choice-of-law rules should govern, and that Michigan law, therefore, should be applied in deciding the issue of the insurability of the Spangler punitive damages award.
 
 
 17
 Following oral argument on May 7, 1993, the district court issued an Opinion and Order granting Meijer's motion for summary judgment on the issue of punitive damage liability only and denying General Star's motion. Because the liability amount was not in dispute, a judgment was entered on the coverage counts on January 21, 1994, in favor of Meijer and against General Star in the amount of $1,010,202.63.
 
 II. Issues
 
 18
 The primary issue is one of conflict of laws. In Michigan there is no statute or caselaw decision prohibiting liability insurance for coverage of judgments or claims against an insured for punitive damages. In Ohio a statute mandates that liability insurance shall not provide coverage for judgments or claims against an insured for punitive or exemplary damages. Ohio Rev.Code Ann. Sec. 3937.182(B) (Anderson 1989).
 
 
 19
 General Star appeals the district court's legal conclusion that Michigan law, rather than Ohio law, should govern as to the insurability of the Spangler punitive damages award under the "most significant relationship"* choice-of-law methodology embodied in the Restatement (Second) of Conflict of Laws Secs. 188, 193 (1971).[5] General Star's position is that the law of Ohio, the place with the most significant relationship to the issue involved, should apply.
 
 
 20
 It argues that Michigan caselaw adopts the most significant relationship test set out in the Restatement of the Law (Second) Conflict of Laws ("Restatement") Secs. 187-188, 193 (1971), for resolution of choice-of-law disputes concerning the construction, interpretation, or application of contracts.
 
 
 21
 It correctly points out that in diversity cases federal courts must apply the substantive law of the forum state,[6] including the forum's choice-of-law rules.[7]
 
 
 22
 Meijer argues that Sec. 187 of the Restatement, which addresses contract choice-of-law provisions, incorporates by reference Secs. 6 and 188, which require that choice-of-law questions should be resolved by applying the significant contacts test.
 
 
 23
 It also contends that a recent decision of the Supreme Court of Michigan,[8] in reversing a decision of the Michigan Court of Appeals upon which General Star relied, gives vitality to its argument that the traditional choice-of-law test is still the law in Michigan and that either, under that test or under the Restatement methodology, Michigan law must be applied.
 
 III. Analysis
 
 24
 Because this court reviews a district court's application of state law de novo, Charash v. Oberlin College, 14 F.3d 291, 296 (6th Cir.1994), it is critical to analyze that application by first examining the insurance policies, how and where they were negotiated, what their terms are, and what coverages they were to provide.
 
 
 25
 All negotiations with respect to the sales of the policies took place at Meijer's corporate headquarters in Grand Rapids, Michigan. The policies were countersigned by appropriate General Star personnel in Illinois. Meijer paid all premiums from its headquarters and General Star received the premiums at its office located in Grand Rapids, Michigan. No activity concerning the formation of the policies took place in Ohio; additionally, as to the Excess Policy, no performance under that policy took place in Ohio.
 
 
 26
 Unlike the CGL Policy, which obligated General Star to defend any claim or suit against Meijer, the Excess Policy does not require General Star to investigate, defend or settle any claim or suit against Meijer; it requires General Star to indemnify Meijer for ultimate net loss in excess of the underlying insurance. Since General Star settled the underlying Spangler compensatory award, all obligations by General Star to Meijer under the CGL Policy were fulfilled.
 
 
 27
 It is clear that no performance by General Star under the Excess Policy (in any event) was to take place in Ohio or, for that matter, in any place other than Michigan. What is involved here is what state law applies to the promise by General Star to indemnify Meijer for any net loss to it over and above the primary coverages of the CGL.
 
 
 28
 General Star focuses on a so-called triggering event, which it defines as the tort that occurred in Ohio. We note that that event has questionable relevance to a determination of coverage. When General Star contracted with Meijer, its policies did not exclude coverage for punitive damage judgments in Ohio. It knew of the Ohio statute but promised Meijer, nonetheless, that it would insure Meijer for all risks, wherever Meijer conducted business. The triggering event rather was the loss caused to Meijer when it settled the punitive damage ("Spangler") judgment, which judgment was permitted by Ohio law. That loss to Meijer occurred in Michigan.
 
 
 29
 With those observations in mind, the task of applying a choice-of-law methodology can be undertaken.
 
 
 30
 In line with the principle that in diversity cases federal courts must apply the substantive law of the forum state, including the forum's choice-of-law rules, the Michigan Supreme Court in its recent decision in Chrysler Corp. v. Skyline, supra at n. 8, in order to resolve that conflict noted on page 11:
 
 
 31
 [W]e [do not] endorse one particular analytical method over another for resolving contract law conflicts [fn omitted].... Much as lex loci delicti had proven too inflexible for resolution of tort conflicts, the rigid "law of the place of contracting" approach has become outmoded in resolving contract conflicts.
 
 
 32
 The Michigan Supreme Court, in its Opinion on page 12, then went on to a discussion of Sec. 187 of Restatement (Second):
 
 
 33
 "Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract [footnote omitted].
 
 
 34
 Since Michigan law endorses the use of the Restatement (Second) approach to the resolution of conflicts of law in contract cases, we consider whether the district court correctly applied the Restatement methodology.
 
 
 35
 Section 188 of Restatement (Second) of the Conflict of Laws provides:
 
 
 36
 Law Governing in Absence of Effective Choice by the Parties
 
 
 37
 (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in Sec. 6.
 
 
 38
 (2) In the absence of an effective choice of law by the parties (see Sec. 187), the contacts to be taken into account in applying the principles of Sec. 6 to determine the law applicable to an issue include:
 
 
 39
 (a) the place of contracting,
 
 
 40
 (b) the place of negotiation of the contract,
 
 
 41
 (c) the place of performance,
 
 
 42
 (d) the location of the subject matter of the contract, and
 
 
 43
 (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
 
 
 44
 These contacts are to be evaluated according to their relative importance with respect to the particular issue.
 
 
 45
 Section 6, referred to in Sec. 188(1) provides:
 
 Choice-of-Law Principles
 
 46
 (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
 
 
 47
 (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
 
 
 48
 (a) the needs of the interstate and international systems,
 
 
 49
 (b) the relevant policies of the forum,
 
 
 50
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 
 
 51
 (d) the protection of justified expectations,
 
 
 52
 (e) the basic policies underlying the particular field of law,
 
 
 53
 (f) certainty, predictability and uniformity of result, and
 
 
 54
 (g) ease in the determination and application of the law to be applied.
 
 
 55
 Each of these principles when relevant to a significant contact (or a significant relationship) must be considered. In greater or lesser degree each principle may point to the direction in which a contact with a state may be important. Thus the importance of the contacts listed in section 188 (a through e) are illuminated by the principles in section 6.
 
 
 56
 We thus consider these contacts (section 188).
 
 
 57
 Contact (a) the place of contracting: Since Michigan is the forum state and has a paramount interest in having its law applied to a coverage action involving a Michigan policy holder and an insurance company conducting business within Michigan, the undisputed facts that the policies were contracted for in Michigan (and not Ohio) favors the choice of Michigan law.
 
 
 58
 Contact (b), the place of negotiation, strongly favors the application of Michigan law. All negotiation as to the purchase of these policies took place at Meijer's corporate headquarters in Grand Rapids, Michigan. Meijer paid all premiums from its headquarters there, and General Star received the premiums at its office located in that city. Ohio was in no way involved in this contact.
 
 
 59
 Contact (c), the place of performance, is the focus of General Star's contention. The argument it makes is two-fold: first, it contends that Ohio has an interest (even though punitive damage awards are permitted in that state) in preventing punitive damage awards from being insured. This argument lacks substance; nowhere in the policies is there an exclusion based on that statutory policy. If General Star really believed that Ohio's public policy was important to their policies, it should have excluded that coverage.
 
 
 60
 According to Ohio case law, the purpose of the prohibition is to punish wrongdoers and to deter others from engaging in tortious conduct. However, where as here, the liability arises vicariously, the true wrongdoer, the employee, is not punished or deterred. Unless it can be shown that Meijer intentionally condoned tortious conduct by its employees, the punishment of Meijer for the intentional acts of its employees does not further Ohio's public policy.
 
 
 61
 That contention also ignores the principle in Sec. 6(d), the protection of justified expectations. Meijer clearly had an expectation that it would be covered for all risks under these policies except for those specifically excluded.
 
 
 62
 General Star also contends that contact (c), the place of performance, is where the injury-causing conduct occurred and thus requires the application of Ohio law. It argues that the place of injury-causing conduct is important but it is noteworthy that that kind of contact is not listed in Sec. 188 of the Restatement. See Smith v. Hughes Aircraft Corp., 783 F.Supp. 1222, 1228 (D.Arizona 1991).
 
 
 63
 The principle of justified expectations requires that we focus on the indemnification promise. That promise has a significant contact with Michigan and favors the application of Michigan law. See Atlantic Mutual Insurance Co. v. Truck Insurance Exchange, 797 F.2d 1288 (5th Cir.1986).
 
 
 64
 Contact (d), the location of the subject matter of the contract, when viewed against the choice-of-law principle that refers to certainty, predictability and uniformity of result, favors the application of Michigan law. The subject matter of these policies, and particularly the promise of indemnification, is more certain, more predictable and more uniform when Michigan law is applied.
 
 
 65
 Contact (e), the domicil, residence, nationality, place of incorporation and place of business of the parties, favors the application of Michigan law. Meijer's domicil and place of incorporation is Michigan; General Star does business in Michigan. We conclude that the ease in determining applicability of the law is enhanced by our knowledge that all of the factors in contact (e) strongly favor Meijer's position.
 
 
 66
 The weight of the principle in Sec. 6(g), the ease in the determination and application of the law to be applied, also favors the application of Michigan law. This is so particularly in insurance contracts when those contracts are national or international in scope.
 
 
 67
 We turn next to a consideration of the applicable cases that apply to the observations made as to the methodology employed in Restatement (Second). The focus cannot be on the place where the punitive damage judgment was obtained (Ohio); the focus must be where the indemnification of the punitive damage judgment was to be made.
 
 
 68
 Since Michigan is the forum state, Michigan has a strong interest in its citizens' insurance rights. That interest is that the promise of indemnification made to its citizen, Meijer, should be enforced. Revco D.S., Inc. v. Government Employees Ins. Co., 984 F.2d 154 (6th.Cir.1992) is instructive. In that case the U.S.Court of Appeals for the Sixth Circuit affirmed the district court's opinion in Revco, 791 F.Supp. 1254 (N.D.Ohio 1991). The dispute in that case concerned three excess insurers. The first layer excess insurer was insolvent, and the question was whether the insurance coverage provided by the second and third layer excess insurers was required "to drop down" and provide coverage which could not be provided by the first layer excess insurer because of its insolvency. This caused a conflicts of law problem whether to apply Ohio law or Texas law, depending on a finding of most significant contacts under the Restatement methodology.
 
 
 69
 The district court found that Ohio had a strong interest in the dispute regarding coverage of its insureds. Significant factors leading to this conclusion were findings that the negotations for the insurance policies took place in Ohio and that the premiums on those policies were paid from Ohio, and that Revco, the prevailing party, had its principal place of business in Ohio. The district court said:
 
 
 70
 To determine which state's law applies to [such] a controversy, the essence of the suit must be examined and the contacts considered in light of the subject of the suit. This suit is not one for personal injury.... Rather, this suit concerns the scope of excess liability insurance coverage for an Ohio corporation. Ohio, not Texas, has a concern that its domiciliaries' rights under insurance contracts are protected. (footnote omitted).
 
 
 71
 Revco, 791 F.Supp. at 1263 (N.D.Ohio 1991). See also International Ins. Co. v. Stonewall Ins. Co., 863 F.Supp. 599 (S.D.Ohio 1994).
 
 
 72
 Another principle, (Section 6, 2, d), the protection of justified expectations is important. In Atlantic Mutual Insurance Co. v. Truck Insurance Exchange, 797 F.2d 1288 (5th Cir.1986), a dispute existed between several insurance companies which caused a suit for contribution. Important to the decision was the disposition of a conflict of law question. In affirming the district court, the Fifth Circuit considered the expectations of the parties as to the policies of insurance and held that these expectations were important in the choice of law. It referred particularly to the principle in Section 6, 2, d.
 
 
 73
 Sandifer Oil & Gas v. Aig Oil Rig of Texas, Inc., 846 F.2d 319 (5th Cir.1988), holds that in insurance risks, location of the risk is unimportant where the risks are scattered thoughout "two or more states." In the case before us, the policies provided coverage for all of Meijer's locations (in multiple states),
 
 
 74
 "The location of the risk can play little role in the determination of the applicable law." p. 324, or
 
 
 75
 "Indeed--these policies provided coverage without regard to the location of the risk; location was not a part of the parties' understanding." p. 324
 
 
 76
 Armoteck Industries v. Employees Insurance of Wausau, 952 F.2d 756 (3rd Cir.1991), in commenting on Section 188, 2, c, the place of performance, holds,
 
 
 77
 "That the place of performance of an insurance contract, in the absence of a clause specifically dealing with the issue, is the place of performance." p. 761
 
 
 78
 General Star Indemnity Company v. Liberty Mutual Insurance Company, 960 F.2d 377 (3rd Cir.1992), says:
 
 
 79
 "Although the underlying trial and settlement negotiations took place in Pennsylvania, all of the parties to this litigation reside elsewhere, and the contract of insurance was presumably delivered in New York. Because the protection of insured parties is the primary public policy behind laws governing duties owed by an insurer to the insured, Pennsylvania has little interest in furthering the primary public policy implicated here: protection of a New York insured and a Connecticut excess insurer by means of regulating the conduct of a Massachusetts primary insurer. As between New York and Pennsylvania, New York law should regulate the relations between these parties. "
 
 
 80
 Comment f to Section 193 of Restatment (2nd) suggests that when a policy insures against multiple risks located in several states, which are governed by different statutes, the policy should incorporate the different statutes of the states involved. Thus the policy would be treated separately for each state. This is the ideal way of resolving this problem in the future if this is in fact what General Star Indemnity Company believed it bargained for. However, no such provisions were included in the policies at issue here. Thus, any ambiguities in the contract must be construed against the insurer under Michigan law. General Star Indemnity Company must provide coverage.
 
 
 81
 In summary, then, the analysis that we have made as directed by the methodology in the Restatement preponderates strongly in favor of the application of Michigan law. To focus only on one factor, one contact, even if such arguably would be an Ohio contact, distorts the approach of the methodology.
 
 
 82
 Since we analyze this choice of law issue under the Restatement methodology and make our conclusions of law consistent therewith, it is unnecessary to consider the impact of Michigan's Supreme Court decision in Skyline, above.
 
 
 83
 Accordingly, we must apply Michigan law to this issue and hold that the promise of indemnification as to the punitive damage judgment should be enforced.
 
 
 84
 The judgment of the district court is affirmed.
 
 
 85
 ALAN E. NORRIS, Circuit Judge, dissenting.
 
 
 86
 I agree with my colleagues' conclusion that Michigan law allows the use of the Restatement (Second) of Conflict of Laws (1971) (the "Restatement") to resolve the conflict of laws that this case presents. I disagree with the conclusion that the district court correctly applied the Restatement, however. Therefore, I respectfully dissent.
 
 I.
 
 87
 In making its choice of law determination, the district court recognized that Michigan courts have traditionally interpreted contracts under the law of the place where the contract was made or under the law of the place of performance if the place of performance differed from the place of making. Meijer, Inc. v. General Star Indem. Co., 826 F.Supp. 241, 244 (W.D.Mich.1993). The court rejected this traditional approach, however, and instead applied the "most significant relationship" test of the Restatement Sec. 188 and various related Restatement provisions and comments. The court noted that the Restatement approach had been "approvingly utilized" in Chrysler Corp. v. Skyline Indus. Servs., Inc., 199 Mich.App. 366, 502 N.W.2d 715 (1993), rev'd, 448 Mich. 113, 528 N.W.2d 698 (1995). Meijer, Inc., 826 F.Supp. at 244-45.
 
 
 88
 After we heard oral argument in this case, the Michigan Supreme Court issued an opinion that--although reversing the result of Skyline--broadly endorsed the use of the Restatement approach for resolving conflicts of law in contracts cases. Chrysler Corp. v. Skyline Indus. Servs., Inc., 448 Mich. 113, 528 N.W.2d 698 (1995). The Michigan high court stated generally, "Secs. 187 and 188 of the Second Restatement, with their emphasis on examining the relevant contacts and policies of the interested states, provide a sound basis for moving beyond formalism to an approach more in line with modern-day contracting realities." Id. at 124, 528 N.W.2d at 703. The court added, "the concerns for certainty and public policy expressed in the Second Restatement reflect sound considerations that may guide a court in resolving specific conflicts between the contract laws of different states." Id. at 125, 528 N.W.2d at 703. Although Skyline concerned a contract that included a choice of law provision, its general acceptance of the Restatement supports the district court's decision to apply the Restatement here.[1]
 
 II.
 
 89
 Applying the Restatement, the district court concluded that "the choice-of-law issue in this case is close, but that on balance Michigan law should control this dispute." Meijer, Inc., 826 F.Supp. at 246. Meijer's primary argument in support of this conclusion is that this insurance coverage dispute is a contract interpretation case unrelated to the underlying tort. It points out that it is a Michigan corporation, its primary place of business is Michigan, the insurance contracts were negotiated in Michigan, and--in Meijer's view--the insurance contracts were to be performed in Michigan.
 
 
 90
 Meijer contends that Michigan has a significant interest in having its law apply to a coverage action between a Michigan policyholder and an insurance company doing business within the state. It argues that Ohio has no contacts with the insurance contract at issue here. Therefore, it contends Ohio has no interest in regulating the relations between General Star and Meijer.
 
 
 91
 In my view, this argument is patently wrong. The Ohio legislature has explicitly provided that "no ... policy of ... liability insurance ... shall provide coverage for judgments or claims against an insured for punitive or exemplary damages." Ohio Rev.Code Ann. Sec. 3937.182(8) (Anderson 1989). The state's highest court recognized that this statute reflects a strong public policy against such coverage: "The purpose of punitive damages is to punish the offending party and make the offender an example to others so that they might be deterred from similar conduct. In accord with this purpose, Ohio law has long disfavored insurance against punitive damages resulting from the insured's own torts." State Farm Mut. Ins. Co. v. Blevins, 49 Ohio St.3d 165, 168, 551 N.E.2d 955, 958 (1990) (citations omitted).[2]
 
 
 92
 This case arose because Meijer's agents in Ohio unlawfully physically assaulted Leroy Spangler and inflicted injuries so severe he will spend the rest of his life in a wheelchair. Ohio's policy is designed to deter exactly this type of egregious conduct by making persons who commit intentional torts feel the financial impact of their conduct, rather than pass that impact on to insurers. This policy cannot achieve its object--protecting Ohio citizens by deterring tortfeasors--unless Ohio law governs insurance contracts of persons incurring punitive damages in Ohio.
 
 
 93
 Meijer does extensive and continuous business in Ohio. This significant presence makes Meijer particularly amenable to Ohio's policy of deterrence. As opposed to a person who only briefly comes into contact with Ohio law, i.e., a motorist passing through on the highway or a corporation engaging in a single transaction in the state, Meijer's substantial and constant presence in Ohio gives it every incentive to learn Ohio law and to train its agents to comply with that law. Thus, my colleagues' decision eviscerates Ohio's deterrence policy by preventing its operation in exactly the type of situation in which it would be most effective.
 
 
 94
 Meijer relies upon General Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co., 960 F.2d 377, 379-80 (3d Cir.1992), and Revco D.S., Inc. v. Government Employees Ins. Co., 791 F.Supp. 1254, 1263 (N.D.Ohio 1991), aff'd 984 F.2d 154 (6th Cir.1992), two insurance coverage disputes in which courts refused to apply the law of the state where the coverage-triggering events occurred. These cases are inapposite, however, because neither implicated an express state policy directed specifically at insurance coverage. My analysis of Ohio's interest in the insurance contracts does not rest solely upon the fact that the underlying tort occurred in Ohio. Instead, I would hold that Ohio has a compelling interest in this insurance coverage dispute because the underlying tort occurred in Ohio and because an express state policy concerns insurance coverage of the damages awarded as a result of that tort.
 
 
 95
 As the district court recognized, Michigan has an interest in regulating the insurance coverage of its citizens. Michigan has no articulated policy with respect to the insurability of punitive damages, however. Neither Michigan's legislature nor its courts have addressed the issue. See Stuart E. Sterk, The Marginal Relevance of Choice of Law Theory, 142 U.Pa.L.Rev. 949, 969 n. 91 (1994) (noting that the district court, in its opinion in this case, "virtually made up [Michigan] law that had not been developed in previous cases."). Therefore, I conclude Ohio's express policy, as stated in both a statute and a supreme court opinion, indicates a more substantial interest than whatever policy we can infer from Michigan's silence on the subject.
 
 
 96
 Moreover, Michigan law regarding punitive damages is not as clear as the court below indicated. The district court noted that Michigan law does not authorize punitive damages, and held that "Michigan has a paramount interest in not subjecting its citizens to an uninsurable risk of punitive damages where it does not expose its citizens even to the risk of punitive damages." Meijer, 826 F.Supp. at 246. Michigan law does authorize, however, exemplary damages for injuries inflicted "maliciously, willfully, and wantonly." Kewin v. Massachusetts Mut. Life Ins. Co., 409 Mich. 401, 419, 295 N.W.2d 50, 55 (1980). These exemplary damages differ from traditional punitive damages only in that they "are recoverable as compensation to the plaintiff, not as punishment of the defendant." Id. Although Michigan law does not prohibit indemnification for punitive damages, the absence of such a prohibition does not establish a paramount interest in ensuring insurance coverage for its citizens who act maliciously, willfully, or wantonly. When, as here, the reprehensible conduct occurs in another state, whatever interest Michigan has in ensuring insurance coverage must be subordinate to the other state's clearly articulated policy forbidding coverage.
 
 
 97
 An analysis of the place where the insurance contracts were to be performed also favors application of Ohio law. The place of performance is one of the factors relevant to determining which state has the "most significant relationship" to the contract under Sec. 188 of the Restatement. I disagree with Meijer's assertion that Michigan was the place of performance. The insurance contracts obligated General Star to provide a defense for Meijer and pay all damages imposed upon Meijer.[3] General Star could have been called upon to perform in any state in which Meijer did business. Here, General Star's obligations to defend and pay arose in Ohio, the state which Spangler filed his action, the damages verdict was rendered, and Spangler resided. If any one state can be called the place of performance, it is Ohio--not Michigan.
 
 
 98
 Section 193 of the Restatement, the provision that addresses insurance contracts, also favors application of Ohio law. Section 193 provides as follows:
 
 
 99
 The validity of a contract of ... casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in Sec. 6 to the transaction and the parties, in which event the local law of the other state will be applied.
 
 
 100
 Here, the polices provided coverage for risks located in a number of states. Comment f to Sec. 193 concerns such multiple risk policies. It states, in part, "it is thought that the court would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance with the local law of [the state in which the coverage-triggering event occurred]." Id. Thus, as the Court of Appeals for the Eleventh Circuit has observed, "the Restatement advises application of the substantive law in the state in which each individual risk is located when adjudicating issues concerning that risk, treating the comprehensive policy effectively as several different policies." Shapiro v. Associated Int'l Ins. Co., 899 F.2d 1116, 1120 (11th Cir.1990).
 
 
 101
 Meijer argues that applying Ohio law in this case would defeat its reasonable expectations that courts would construe the insurance policies under Michigan law. It contends that law governing a particular insurance contract should not vary from place to place, depending upon where a claim is filed. This argument is unpersuasive. It seems reasonable that parties to insurance policies providing coverage anywhere in North America would expect the policies to be given effect under the law of any jurisdiction in which the insured required coverage. See National Union Fire Ins. Co. v. Watts, 963 F.2d 148, 152 (6th Cir.1992) (recognizing that an insurer who issued a car insurance policy providing coverage anywhere in the United States intended the policy to be governed by the state in which the insured was using his vehicle). Here, since Meijer willingly did business in Ohio, it does not seem unreasonable to conclude that it should have expected Ohio law to govern its insurance coverage.
 
 
 102
 Moreover, recognition of Ohio's paramount interest here will not defeat Michigan's presumed interest in ensuring that its citizens receive the benefit of the insurance contracts they negotiate in Michigan. If Ohio law controls the insurability of punitive damages awards imposed in Ohio, all such insured persons doing business in Ohio will know they face an uninsurable risk of punitive damages. They can then plan their affairs and negotiate their insurance premiums accordingly. This result will allow Ohio to carry out its public policy without defeating the Restatement's goals of certainty, uniformity, and predictability of results. See Restatement Sec. 6(2)(f).
 
 
 103
 Finally, my view here does not conflict with the Michigan Supreme Court's recent opinion in Skyline. There, Skyline contracted to paint and renovate a Chrysler plant in Illinois. Skyline, 448 Mich. at 117, 528 N.W.2d at 699. The contract included a provision whereby Skyline agreed to indemnify and hold Chrysler harmless from Chrysler's negligence. Id. When a worker was injured and sued Chrysler, Chrysler brought an indemnification action against Skyline in Michigan. An Illinois statute rendered the indemnification agreement unenforceable under Illinois law. The contract called for application of Michigan law, however. Applying the Restatement, the court held that the law of Michigan governed the effect of the contract even though Illinois courts had recognized that prohibiting indemnification agreements in construction contracts was a "fundamental policy" in Illinois. Id. at 131, 528 N.W.2d at 706.
 
 
 104
 This case is distinguishable from Skyline in at least two fundamental ways. First, and most obviously, the parties there agreed that Michigan law would govern their contract. Id. at 132, 528 N.W.2d at 707.[4] Second, the court recognized that application of the Illinois statute might violate Michigan's express public policy, reflected in a statute, of prohibiting indemnification only in certain circumstances. Id., 528 N.W.2d at 706. The court relied upon both of these factors in reaching its result. Id. at 126, 528 N.W.2d at 703.
 
 
 105
 This case involves neither a choice of law agreement nor an articulated Michigan policy. Application of Ohio law therefore would not defeat the parties' reasonable expectations or encroach upon Michigan's legitimate interests.
 
 III.
 
 106
 For the reasons stated above, I would reverse the order of the district court and remand this cause for entry of judgment in favor of General Star.
 
 
 107
 MARTHA CRAIG DAUGHTREY, Circuit Judge, concurring.
 
 
 108
 I concur in the result reached in this matter by Judge Feikens. As both Judge Feikens and Judge Norris recognize, the Michigan Supreme Court has recently endorsed the Statement (Second) of Conflict of Laws "most significant relationship" test for resolving choice of law issues in the state. Chrysler Corp. v. Skyline Indus. Servs., Inc., 448 Mich. 113, 124-25, 528 N.W.2d 698, 703 (1995). I believe application of that test, with its "[p]rime objective[ ] ... to protect the justified expectation of the parties," id., supports reliance upon Michigan law in this instance. All significant negotiations and contracting activities concerning the insurance agreement between the parties occurred in Michigan. Moreover, regardless of any interest Ohio may have in forcing tortfeasors to bear the burden of satisfying punitive damage judgments, the fact remains that the very purpose of the indemnification policy at issue here was not to protect only specific, isolated instances of wrongdoing or negligence in Ohio, but rather, to protect a Michigan corporation broadly in the everyday performance of its varied business dealings. I agree, therefore, that the judgment of the district court should be affirmed.
 
 
 
 *
 The Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Excess Policy obligated General Star to indemnify Meijer for damages in excess of Meijer's underlying $5,000,000 umbrella policy. The Excess Policy did not impose a duty to defend, but provided that General Star had the "opportunity to associate" with Meijer in the investigation and defense of any claim. Both policies provided coverage for claims arising anywhere in North America
 
 
 [2]
 The personal injury action was precipitated by an incident involving Leroy Spangler, Jr., a suspected shoplifter, at one of Meijer's Columbus, Ohio stores. Spangler, and his son, filed an action against Meijer for his injuries (quadriplegia). The Ohio trial court informed the jury in the Spangler action that, in addition to compensatory damages, it could also award punitive damages and attorneys' fees. The jury awarded both compensatory and punitive damages (including attorneys' fees) against Meijer in the Spangler action. The jury awarded total compensatory damages of $12,950,467 and found that the Spanglers were entitled to punitive damages including attorneys' fees. The Ohio court assessed punitive damages in the amount of $525,000 and attorneys' fees in the amount of $337,500 against Meijer. While the case on appeal was pending, the Spanglers settled their compensatory award with Meijer's insurers, including General Star, and negotiated a separate settlement of the punitive damages and attorneys' fees award with Meijer
 
 
 [3]
 Shortly after removal, General Star filed a Motion to Dismiss, Or in the Alternative, Stay or Transfer Proceedings, based upon the abstention doctrine or, alternatively, requesting that the Michigan district court either stay the matter or transfer it to a then-pending coverage action ("second action") filed by General Star in the United States District Court for the Southern District of Ohio. General Star's motion was denied and the Ohio district court transferred the second action to the Michigan district court. The parties later stipulated to the dismissal of the second action with prejudice
 
 
 [4]
 Subsequent to removal, Meijer filed an amended complaint, adding a claim for bad faith (Count III). The parties later settled the bad faith claim and Meijer voluntarily dismissed the claim with prejudice
 
 
 *
 The terms "significant relationship" and "significant contacts" have the same meaning
 
 
 [5]
 Because the policies in question were negotiated and paid for in Michigan by a Michigan corporation, the district court concluded that "on balance Michigan law should control the dispute" since, "Michigan has an interest in assuring that its citizens receive the contractual benefits for which they negotiated without fear that the law of a foreign jurisdiction will invalidate them." Meijer v. General Star Indemnity Co., 826 F.Supp. 241, 246 (W.D.Mich.1993)
 
 
 [6]
 Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)
 
 
 [7]
 Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Charash v. Oberlin College, 14 F.3d 291, 296 (6th Cir.1994)
 
 
 [8]
 Chrysler Corp. v. Skyline Industrial Services, Inc., No. 97396, slip op. (Mich. Mar. 7, 1995), rev'g, 199 Mich.App. 366, 502 N.W.2d 715 (1993)
 
 
 [1]
 In Skyline, the Michigan Supreme Court refused to abandon explicitly Michigan's traditional "law of the place of contracting" conflicts approach. Skyline, 448 Mich. at 124, 528 N.W.2d at 703 n. 28. Instead, the court pointed out that the traditional approach "may prove to be unworkable under certain factual situations ... which demand a more extensive review of the relative interests of the parties and the interested states." Id. I am confident that the circumstances of this case, in which the contract was made in Illinois, potentially required performance in any of a number of states, and concerns matters of interest to Ohio and Michigan, present the type of factual situation in which the Michigan Supreme Court would conclude that the traditional approach is unworkable
 
 
 [2]
 Moreover, if Ohio law applies, Meijer cannot recover for the attorneys' fees which the trial court awarded. Under Ohio law, "[i]f punitive damages are proper the aggrieved party may also recover reasonable attorneys' fees." Columbus Finance, Inc. v. Howard, 42 Ohio St.2d 178, 183, 327 N.E.2d 654, 658 (1975). The most recent Ohio Supreme Court case on the issue held that the award of attorneys' fees in a tort action, "although seemingly compensatory ... is a punitive ... remedy that flows from a jury finding of malice and the award of punitive damages." Digital & Analog Corp. v. North Supply Co., 63 Ohio St.3d 657, 662, 590 N.E.2d 737, 741 (1992). It follows that attorneys' fees should be considered as part of the punitive award when applying Ohio's prohibition on indemnification for punitive awards
 
 
 [3]
 The general liability policy obligated General Star to defend Meijer in any personal injury suit. The excess policy provided only that General Star had the opportunity to associate with Meijer's defense. The record establishes that General Star took an active role in defending against Spangler's claim
 
 
 [4]
 The Michigan Supreme Court relied upon Sec. 187 of the Restatement, which provides that courts should apply the law the parties chose, unless
 application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest in the chosen state in the particular issue and which, under the rule of Sec. 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
 Restatement Sec. 187(2)(b). As the court noted, the question before it was "whether Illinois has a materially greater interest than Michigan sufficient to ignore the parties' choice of Michigan law." Skyline, 448 Mich. at 127, 528 N.W.2d at 704 (second emphasis added).